IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PAUL CHANDHOK,

      Plaintiff,

vs.                                                                      No. CIV 19-00362 JB/JFR

COMPANION LIFE INSURANCE
COMPANY,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Plaintiff's Petition for an Award of Attorney's Fees, filed September 17, 2020 (Doc. 33)("Motion"); and (ii) the Memorandum of Law in Support of Motion for an Award of Attorneys Fees and Costs, filed November 24, 2020 (Doc. 39)("Memo."). The Court held a hearing on October 5, 2020. See Clerk's Minutes at 1, filed September 29, 2020 (Doc. 36). The primary issues are: (i) whether Plaintiff Paul Chandhok, as the requesting party, achieved some degree of success on the merits, and thus is eligible for an award of attorney's fees; (ii) whether the factors that the United States Court of Appeals for the Tenth Circuit considers in the award of attorney's fees under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(g)(1), support the award of reasonable attorney's fees and costs; and (iii) whether § 1132(g)(1) authorizes a court to award attorney's fees for work done before litigation commences in a United States District Court. The Court concludes that: (i) Chandhok is eligible for reasonable fees and costs, because his success in having his claims remanded to Defendant Companion Life Insurance Company ("Companion Life") for further consideration, and his success in arguing that the disability policy language covers him beyond his final full day at work, constitute some degree of success on the merits; (ii) the five factors that the

Tenth Circuit considers in an award of attorney's fees under ERISA weigh in Chandhok's favor, because (a) Companion Life acted culpably in its denial of Chandhok's claims; (b) Companion Life is able to satisfy an award of reasonable fees and costs; (c) an award of fees will deter Companion Life and other ERISA plan administrators from acting in a similar manner; and (d) Companion Life's later motion for reconsideration does not raise sound arguments, thus making an award in Chandhok's favor appropriate; but (e) Chandhok's suit is not brought on behalf of a broad section of plan beneficiaries nor does it resolve a broader question regarding ERISA; and (iii) the Court will not award fees for work done before the start of litigation in a United States District Court, because such an award runs counter to both § 1132(g)(1)'s plain language and the Congressional purpose of ERISA.  Accordingly, the Court: (i) grants in part and denies in part the motion; (ii) grants in part and denies in part the Memo.; and (iii) awards Chandhok $47,163.60, because this amount is an appropriate award of reasonable attorney's fees and costs incurred after litigation commenced in the Court.

## FACTUAL BACKGROUND

As it has done in the past, the Court recites the factual background as stated in Memorandum Opinion and Order, Chandhok v. Companion Life Ins. Co., 478 F. Supp. 3d 1157 (D.N.M. 2020)(Browning, J.), filed August 13, 2020 (Doc. 30)("MOO I") as neither party has objected to the Court's recitation of facts in the MOO I.  The footnotes associated with the quoted text are also quoted in full from the MOO I.  See MOO I, 478 F. Supp. 3d at 1161-65.

> Companion Life issued the Group Long Term Disability Policy ("Policy") to Melloy Brothers Enterprises, an Albuquerque, New Mexico-based car dealership.  See Memorandum of Law in Support of Companion Insurance Company's Motion for Summary Judgment ¶ 1, at 2, filed January 10, 2020 (Doc. 22-1)("Memo.")(citing Group Long Term Disability Insurance Policy (undated), in the Administrative Record at 188-219, filed February 6, 2020 (Doc. 27)("A.R.")).  The Policy covers "[a]ll Full-time Active Employees. . . . Full-time employment means the employee must work at least 30 hours per week."  See Memo. ¶ 2, at 2 (citing Policy at 14, 23 (A.R. at 198, 207)).  Chandhok

was an Assistant Sales Manager at Melloy Brothers Enterprises, Inc., an Albuquerque, New Mexico-based car dealership.  See Appellant's Brief in Chief at 5, filed January 3, 2020 (Doc. 21)("Brief"); Application for Group Life, AD&D (undated)(A.R. at 220); Notification of Appeal (Aug. 25, 2017)(A.R. at 1408).  As part of his job, Chandhok first became insured under the Policy on June 1, 2015.  See Memo. ¶ 3, at 2 (citing Application for Long Term Disability Income Benefits at 1 (dated June 23, 2016)(A.R. at 2742)("Application")).  His last day of work at Melloy Brothers was March 4, 2016.  See Memo. ¶ 4, at 2 (citing Application at 4 (A.R. at 2745)).  Chandhok claimed disability on March 5, 2016.  See Memo. ¶ 4, at 2 (Application at 4 (A.R. at 2745)).

The Policy states that disability benefits are payable when the insureds: "'(1) become Disabled while insured under The Policy; (2) are Disabled through the Elimination Period; (3) remain Disabled beyond the Elimination Period; and (4) submit Proof of Loss to Us.'"  Memo. ¶ 5, at 2-3 (quoting Policy at 27 (A.R. at 211)).  One of the requirements of proving disability under the Policy is that the insured is unable to perform "'one or more of the Essential Duties of . . . Your Occupation for the 24 months following the Elimination period, and as a result Your Current Monthly Earnings are less than 80% of Your indexed Pre-disability Earnings.'"  Memo. ¶ 6, at 3 (quoting Policy at 17 (A.R. at 201)).  To cover a disability, the Policy requires that the disability result from "'accidental bodily injury,'" "'Sickness,'" "'Mental Illness,'" "'Substance Abuse,'" or "'pregnancy.'"  Memo. ¶ 7, at 3 (quoting Policy at 17 (A.R. at 201)). The Policy terminates coverage on the earliest of

> the date The Policy terminates; the date The Policy no longer insures Your class; the date premium payment is due but not paid by the Employer; the last day of the period for which You make any required premium contribution; the last day of the month or on next following the month in which Your Employer terminates Your employment; the date You cease to be a Full-time Active Employee in an eligible class for any reason; unless coverage is extended under the Continuation Provisions.

Memo. ¶ 8, at 3-4 (quoting Policy at 25 (A.R. at 209)).  On June 24, 2015, months before Chandhok's asserted injury, Dr. Michael Garcia, Chandhok's primary care physician, examined Chandhok and found "'no particular injury but several months of medial left knee pain.'"  Brief at 10 (quoting Dr. Garcia Notes at 3 (dated June 24, 2015)(A.R. at 825)).

Chandhok says that he injured himself on January 9, 2016, when he caught his right heel in a pothole and fell on his left knee.  See Memo. ¶ 9, at 4 (citing Application at 4 (A.R. at 2745)); First Medical Review Form at 2 (dated Sept. 15, 2016)(A.R. at 2553).  After this incident, he experienced "severe pain in left side of body (tip of toe), right heel spur & left knee bruised and causing pain to lower back/leg/heel/spine."  Memo. ¶ 10, at 4 (citing Application at 3 (A.R. at 2744)).  Chandhok worked full time between his fall and March 4, 2016, and did not seek

medical attention until one week after he stopped working.  See Memo. ¶ 13, at 4 (citing Application at 4 (A.R. at 2745)).  Chandhok said on his application for disability benefits that, because seventy to ninety percent of his job requires walking, his job is impossible to do with an injured knee and bruised heel.  See Memo. ¶ 11, at 4 (citing Application at 4 (A.R. at 2745)).  Chandhok has stated that his general manager saw him walking with a limp and suggested that he take time off work.  See Memo. ¶ 14, at 5 (citing First Letter from Sanda Kaserman to James Rawley at 3 (dated Aug. 25, 2017)(A.R. at 280)("First Letter")).  A manager at Melloy Brothers questioned the validity of Chandhok's disability claim.  See Memo. ¶ 14, at 5 (citing First Letter at 3 (A.R. at 280)); Marc Scully Notes at 1 (dated July 22, 2016)(A.R. at 187).

On March 10, 2016, Chandhok underwent a CT Scan after complaining about weakness and numbness in his extremities lasting three days.  See Memo. ¶ 15, at 5 (citing Notes from Lovelace Hospital at 15, 18 (dated July 27, 2017)(A.R. at 455, 458)).  The resulting preliminary radiological report noted that the results were unremarkable.  See Memo. ¶ 15, at 5 (citing Notes from Lovelace Hospital at 15 (A.R. at 455)).  The next day, on March 11, 2016, Chandhok went to an Emergency Room for numbness in his left arm, shoulder, and leg.  See Memo. ¶ 16, at 5 (citing Lovelace Hospital Treatment Notes at 1-5 (A.R. at 85-89)); Brief at 11.  He reported then that his symptoms started one week earlier and "'start randomly [and] go away randomly.'"  Memo. ¶ 17, at 5 (quoting Lovelace Hospital Treatment Notes at 3 (A.R. at 87)(alteration in Memo.).  The ER physician thought that Chandhok's symptoms were "'most likely neuropathy[1] that could be due to cervical root impingement or elbow impingement of the nerve by the way that that the patient describes,'" but "'a transient ischemic attack[2] is also in the differential,'" and he recommended an MRI.[3]  Memo. ¶ 18, at 5 (quoting Lovelace Hospital Treatment Notes at 4 (A.R. at 88)).  The ER records document Chandhok's hypertension history, but his blood pressure was normal on that day.  See Memo.

---

[1]Peripheral neuropathy is a result of nerve damage outside the brain and spinal cord and results in numbness and pain in extremities.  See "Peripheral Neuropathy," The Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/peripheral-neuropathy/symptoms-causes/syc-20352061 (last accessed August 4, 2020).

[2]A transient ischemic attack is a "temporary period of symptoms similar to those of a stroke," which lasts only a few minutes and does not cause permanent damage. "Transient Ischemic Attack," The Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/transient-ischemic-attack/symptoms-causes/syc-20355679 (last accessed August 4, 2020).

[3] MRI stands for magnetic resonance imaging.  See "MRI," The Mayo Clinic, https://www.mayoclinic.org/tests-procedures/mri/about/pac-20384768 (last accessed August 4, 2020)("Mayo MRI").  Patients lie inside large, tube-shaped machines which use a magnetic field to create the MRI images.  See Mayo MRI.  MRIs last up to an hour, as opposed to CT scans, which take only ten minutes.  See "MRI vs. CT Scan," Health Images, https://www.healthimages.com/mri-vs-ct-scan/ (last accessed August 4, 2020).

¶ 19, at 5 (citing Lovelace Hospital Treatment Notes at 4 (A.R. at 88)). Chandhok declined an MRI, because he is claustrophobic. See Memo. ¶ 20, at 5 (citing Lovelace Hospital Treatment Notes at 1 (A.R. at 85)). He also declined overnight admission at the hospital. See Memo. ¶ 21, at 5 (citing Lovelace Hospital Treatment Notes at 1, 5 (A.R. at 85, 89)).

Chandhok consulted with Dr. Floyd Pacheco, a podiatry specialist at New Mexico Orthopaedics, on March 15, 2016, for right foot pain. See Memo. ¶ 22, at 6 (citing Dr. Pacheco Treatment Notes at 1-3 (dated August 19, 2016)(A.R. at 37-39); Lovelace Hospital Treatment Notes at 2 (A.R. at 86)); Brief at 12. Chandhok told Dr. Pacheco that his symptoms started three weeks earlier but that he did not recall a specific injury causing his pain. See Memo. ¶ 23, at 6 (citing Dr. Pacheco Treatment Notes at 1 (A.R. at 37)). Chandhok described his pain as aching and severe, said his pain level was a nine out of ten, and said that his pain is worst when standing and walking. See Brief at 12; Dr. Pacheco Treatment Notes at 1 (A.R. at 37). Chandhok told Dr. Pacheco that he walks long hours at work. See Brief at 12; Dr. Pacheco Treatment Notes at 1 (A.R. at 37). Dr. Pacheco diagnosed Chandhok with plantar fasciitis[4] and injected his right tendon sheath with medication. See Memo. ¶ 24, at 6 (citing Dr. Pacheco Treatment Notes at 2-3 (A.R. at 38-39)); Brief at 12. Dr. Pacheco instructed Chandhok not to work for two weeks. See Memo. ¶ 25, at 6 (citing Letter from Dr. Pacheco at 1 (dated March 15, 2016)(A.R. at 179)).

On March 18, 2016, Dr. Garcia examined Chandhok. See Memo. ¶ 27, at 6 (citing March 18 Dr. Garcia Notes at 1-5 (dated March 18, 2016)(A.R. at 134-38)). Dr. Garcia noted, among other results, "'[s]ensation both hands and feet intact to monofilament. Pulses intact both wrists and feet. No atrophy.'" Memo. ¶ 29, at 6 (quoting March 18 Dr. Garcia Notes at 5 (A.R. at 138)). He also noted heel pain from a bone spur. See Brief at 10; March 18 Dr. Garcia Notes at 1 (A.R. at 134).

Chandhok saw a neurologist on April 7, 2016. See Memo. ¶ 33, at 7 (citing Dr. Suter Notes at 1-5 (dated April 7, 2016)(A.R. at 129-33)). Dr. Cary Suter evaluated Chandhok for left arm and left leg numbness. See Memo. ¶ 34, at 7 (citing Dr. Suter Notes at 1-5 (A.R. at 129-33)). Dr. Suter stated that Chandhok was limping and using a cane because of his heel spur, but he noted that Chandhok was otherwise able to walk "'normally with no signs of ataxia'" and that "'[b]oth the left upper and lower extremities show normal muscle bulk with no evidence for atrophy. Muscle tone is normal there are no signs of spasticity.'" Memo. ¶ 35, at 7 (quoting Dr. Suter Notes at 4 (A.R. at 132)). Dr. Suter further noted that "'[r]reflexes are 1 -- and symmetric in all 4 extremities and there are no pathologic reflexes. He has normal strength, 5/5, both proximal and distal. He has intact sensation to all modalities.'" Memo. ¶ 36, at 8 (quoting Dr. Suter Notes at 4 (A.R.

---

[4]Plantar fasciitis is an "inflammation of the plantar fascia, most usually non-infectious, and often caused by an overuse mechanism; elicits foot and heel pain." Plantar fasciitis, Stedman's Medical Dictionary (2014).

at 132)).

Dr. Garcia saw Chandhok again on April 13, 2016, and he noted that an MRI report showed protruding disks and planned to refer him for a cervical epidural.  See Brief at 10; April 13 Dr. Garcia Notes at 1 (dated April 13, 2016)(A.R. at 125).  On June 20, 2016, Dr. Garcia saw Chandhok again and noted minimal swelling in his left knee.  See Brief at 10; June 20 Dr. Garcia Notes at 1 (dated June 20, 2016)(A.R. at 116).  Later, on June 28, 2016, Dr. Garcia completed the Attending Physician Statement on Chandhok's disability benefit application.  See Memo. ¶ 27, at 6 (citing Application at 8-9 (A.R. at 2749-50)).  Dr. Garcia stated at that time that Chandhok's condition had an "onset date" of January 9, 2016, and a "'paper filing'" date of March 10, 2016.  Memo.¶ 30, at 7 (quoting Application at 8 (A.R. at 2749)).  Dr. Garcia did not explain the distinction between these two dates.  See Memo. ¶ 31, at 7 (citing Application at 8 (A.R. at 2749-50)).  Dr. Garcia wrote that Chandhok was still disabled and unable to work.  See Memo. ¶ 37, at 12 (citing June 28 Dr. Garcia Notes at 1 (dated June 28, 2016)(A.R. at 109)).  He also prescribed Chandhok an anti-depressant.  See Brief at 10; June 28 Dr. Garcia Notes at 2 (A.R. at 110).  Dr. Garcia strongly recommended that Chandhok receive specialty care.  See Memo. ¶ 37, at 12 (citing June 28 Dr. Garcia Notes at 1 (A.R. at 109)).

Chandhok, accordingly, went to Dr. Paul Legant, an orthopedic surgeon in Albuquerque, for an independent medical exam.  See Memo. ¶¶ 37-39 (citing July 5 Dr. Legant Notes at 1-7 (dated July 5, 2016)(A.R. at 560-66); Medical Certificate for Return to Work at 1 (dated July 5, 2016)(A.R. at 666)).  Dr. Legant evaluated Chandhok on July 5, 2016.  See Memo. ¶ 39, at 8 (citing June 5 Dr. Legant Notes at 1-7; Medical Certificate for Return to Work at 1).  He prepared a report "'from the orthopedic and neurologic standpoint[, referencing Chandhok's] spine upper and lower extremities.'"  Memo. ¶ 39, at 8 (June 5 Dr. Legant Notes at 7).  Dr. Legant gave Chandhok a one percent permanent impairment for his right foot and ankle based on his plantar fasciitis.  See Brief at 13 (citing Dr. Legant Treatment Notes at 1 (dated July 26, 2016)(A.R. at 572)).  Dr. Legant provided Chandhok a note allowing him to return to work without limitations.  See Memo. ¶ 39, at 8 (citing June 5 Dr. Legant Notes at 1 (A.R. at 566)).  Chandhok's physical therapy reports from this time period note his difficulties walking, his pain after walking more than ten minutes, and his antalgic[5] gait.  See Brief at 12; Records from New Mexico Orthopaedics at 1-4 (dated August 19, 2016)(A.R. at 30-33).

Companion Life reviewed Chandhok's claim for disability on September 15, 2016 and concluded that the only condition supporting impairment was his

---

[5] Antalgic is defined as "marked by or being an unnatural position or movement assumed by someone to minimize or alleviate pain or discomfort (as in the leg or back)."  Meriam-Webster Dictionary, "Antalgic," https://www.merriam-webster.com/medical/antalgic (last accessed August 8, 2020).

plantar fasciitis diagnosis.  Memo. ¶ 41, at 8 (citing Medical Review Form at 5 (A.R. at 2556)).  Companion Life further concluded:

> The claimant is reporting multiple symptoms which include knee pain, neck pain and low back pain that date back to a work-related injury in January 2016; however, he continued to work up until March 4, 2016.  Please refer to the analysis for more detail. The fact that the claimant was able to work for two months with these symptoms, does not support impairment.  In addition, when he first presented to Dr. Garcia on 3/18/16, there was no mention of knee pain or electric shock type pain on top of the head.  It is not clear when these symptoms actually first appeared and how they are impacting function.

Memo. ¶ 41, at 8 (citing Medical Review Form at 5 (A.R. at 2556)).  Companion Life denied Chandhok's claim on September 21, 2016.  See Memo. ¶ 42, at 9 (citing Letter from Marc Scully to Paul Chandhok at 1-3 (dated Sept. 21, 2016)(A.R. at 10-12)("Scully Letter")).  Chandhok appealed the decision on February 22, 2016.  See Memo. ¶ 43, at 9 (citing Letter from Paul Chandhok to Marc Scully at 1 (dated Feb. 22, 2017)(A.R. at 2)).  Chandhok argued in the appeal that he had "'severe difficulty from my head to my leg, and under this stress, depression also.'" Memo. ¶ 44, at 9 (quoting Letter from Paul Chandhok to Marc Scully at 1 (A.R. at 2)).  On January 17, 2017, Chandhok met with Kevin Heiskala, a clinical social worker, who evaluated Chandhok's mental health.  See Brief at 9 (citing Heiskala Notes at 1-13 (dated Jan. 17, 2017)(A.R. at 751-763)).

On August 9, 2016, Dr. Garcia examined Chandhok and noted a minimally swollen left knee.  See Brief at 10; Aug. 9 Dr. Garcia Notes at 4 (dated Aug. 9, 2016)(A.R. at 852).  On August 17, 2016, Dr. Garcia dictated a letter stating his opinion that Chandhok was not ready to return to work because of ongoing pain and the sedating effect of his current medication.  See Brief at 10; Aug. 17 Dr. Garcia Notes at 5 (dated Aug. 17, 2016)(A.R. at 853).  On December 15, 2016, Dr. Garcia noted that Chandhok had a tender right heel, and severe anxiety and depression.  See Brief at 10; Dec. 15 Dr. Garcia Notes at 1-4 (dated Dec. 15, 2016)(A.R. at 856-59).  On January 6, 2017, Dr. Garcia wrote that he was "very concerned" about Chandhok's mental state.  Brief at 10 (citing January 6 Dr. Garcia Notes at 1 (dated June 6, 2017)(A.R. at 860)).  On January 17, 2017, Dr. Legant wrote that he thought "'it would be fine to see his podiatrist for further care of his right foot and heel.'" Brief at 13 (quoting Jan. 17 Dr. Legant Notes at 1 (dated Jan. 17, 2017)(A.R. at 568)).

Companion Life reviewed Chandhok's file again on August 4, 2017.  See Memo. ¶ 46, at 9 (citing Second Medical Review Form at 1-7 (dated Aug. 4, 2017)(A.R. at 283-89)).  It concluded, again, that only plantar fasciitis impaired Chandhok from March 15, 2016, until July 5, 2016.  See Memo. ¶ 47, at 9 (citing Second Medical Review Form at 1-7 (A.R. at 283-89)).  It also concluded

that the medical information provided does not support impairment preventing Chandhok from performing light and sedentary activities:

> The claimant's reported pain severity does not appear to correlate with the clinical assessments and diagnostics. The claimant's electromyography[6] on 04/07/16 was within normal limits. The MRI of his thoracic and cervical spine on 03/25/16 demonstrated mild findings. The x-ray of his left knee on 04/13/16 demonstrated minimal degenerative changes. His MRI of his lumbar spine on 05/25/16 also demonstrated mild findings. His physical assessment in the emergency room on 03/11/16 demonstrated no neurological abnormalities and a normal gait. His physical assessment with neurologist Dr. Suter on 04/07/17 demonstrated limping and use of a cane due to his right heel pain however, he had normal strength, muscle tone, sensation, no swelling and no signs of spasticity.

Memo. ¶ 48, at 9 (quoting Second Medical Review Form at 6 (A.R. at 288)). Companion Life denied Chandhok's appeal on August 25, 2017. See Memo. ¶ 49, at 9 (citing First Letter at 1-4 (dated Aug. 25, 2017)(A.R. at 968-71)).

Chandhok began to see Dr. Zachary Haas, a podiatrist at Albuquerque Associated Podiatrists, in September, 2017. See Brief at 10-11 (citing Dr. Haas Notes (dated March 22, 2017)(A.R. at 867-75)). On February 15, 2018, Dr. Ronald Romanik, an Albuquerque-based psychiatrist, performed a psychiatric evaluation of Chandhok. See Brief at 9 (citing Dr. Romanik Notes at 1-17 (A.R. at 806-822)). Dr. Romanik saw Chandhok again on March 1, 2018, March 15, 2018, April 17, 2018, and April 26, 2018. See Brief at 9 (citing Dr. Romanik Notes at 1-17 (A.R. at 806-822)). On April 26, Dr. Romanik noted Chandhok "has developed a mixed presentation of depression and hypomania[7]," and Dr. Romanik discussed the possibility of hospitalization if his condition did not improve. See Brief at 9 (citing Dr. Romanik Notes at 3 (A.R. at 808)).

Chandhok appealed Companion Life's denial of disability benefits again in early 2018, and he supplied additional medical records, including those relating to his psychiatric treatment. See Memo. ¶ 50, at 10 (citing Letter from James Rawley to Sandra Kaserman (dated July 3, 2018)(A.R. at 734)). Companion Life reviewed Chandhok's claim again on August 8, 2018. See Memo. ¶¶ 51-52, at 10 (citing Third Medical Review Form at 1-5 (dated Aug. 8, 2018)(A.R. at 1853-57)). It did not change its assessment of Chandhok's plantar fasciitis, left knee pain, lower back

---

[6] Defined as "the recording of electrical activity generated in muscle for diagnostic purposes." Electromyography, Stedman's Medical Dictionary (2014).

[7] Hypomania is "a mild degree of mania." Hypomania, Stedman's Medical Dictionary (2014).

pain, and left upper extremity radicular pain.  See Memo. ¶ 53, at 10 (citing Third Medical Review Form at 4 (A.R. at 1856)).  Companion Life reviewed records relating to Chandhok's adjustment disorder, anxiety, and depression.  See Memo. ¶ 54, at 10 (citing Third Medical Review Form at 3 (A.R. at 1855)). These records are dated nearly a year after Chandhok's last day of work, and Companion Life concluded that they did not support impairment.  See Memo. ¶ 55-56, at 10; Third Medical Review Form at 1-5 (A.R. at 1853-57).

　　　　Companion Life denied Chandhok's appeal on August 24, 2018.  See Memo. ¶ 57, at 11 (citing Second Letter from Sandra Kaserman to James Rawley at 1-3 (dated Aug. 24, 2018)(A.R. at 721-23)("Second Letter")). Companion Life's denial letter recites a policy provision: "'Your coverage will end on the earliest of the following . . . the last day of the month on or next following the month in which your employer terminates your employment.'"  Brief at 15 (quoting Second Letter at 1 (A.R. at 721)).  It notes that, because Chandhok was not covered under the Policy after March 4, 2016, he is not entitled to disability benefits.  See Brief at 15 (citing Second Letter at 3 (A.R. at 723)).  Companion Life also stated that the medical evidence did not support impairment until March 15, 2016.  See Brief at 13 (citing Second Letter at 3 (A.R. at 723)).

MOO, 478 F. Supp. 3d at 1161-65.

## PROCEDURAL BACKGROUND

　　　　On August 13, 2020, the Court filed a MOO in response to the Plaintiff's Appeal from the Denial of Companion Life Under ERISA and Companion Life Insurance Company's Motion for Summary Judgment, filed August 13, 2020 (Doc. 30).  See MOO I, 478 F. Supp. 3d at 1159-60. This action involves claims that Companion Life had arbitrarily and capriciously reached conclusions regarding Chandhok's disability claims, including: (i) that Chandhok was not disabled before his diagnosis; (ii) that Chandhok was not insured beyond his last day at work; (iii) that Chandhok's disability ended on July 5, 2016; and (iv) that Chandhok did not have a mental or nervous impairment.   See MOO I, 478 F. Supp. 3d at 1159.   The Court determined: (i) that Companion Life's conclusion that Chandhok was not disabled before his March 15, 2016, diagnosis was arbitrary and capricious; (ii) that Chandhok's policy extended beyond his last day at work; (iii) that Companion Life's conclusion that Chandhok's disability ended on July 5, 2016, was arbitrary and capricious; and (iv) that Companion Life's conclusion that he did not suffer from

a mental or nervous impairment was arbitrary and capricious.  See MOO I, 478 F. Supp. 3d at

1159-60.  Accordingly, the Court remanded the case "to Defendant Companion Life Insurance

Company to determine Plaintiff Paul Chandhok's impairment date, to reconsider its conclusion

that Chandhok was not impaired on July 5, 2016, in light of Dr. Michael Garcia's August, 2016,

comments, and to provide an explanation for its decision to deny Chandhok's mental impairment

claim."  MOO I, 478 F. Supp. 3d at 1179-90.

Following remand, Companion Life filed a Motion to Reconsider Judgment under rule

59(e) and the Court issued an opinion on this Motion on August 17, 2021.  See Memorandum

Opinion and Order, Chandhok v. Companion Life Ins. Co., No. CIV 19-0362 JB/JFR, 2021 WL

3635204 (D.N.M.   Aug.   17,   2021)(Browning, J.),   filed   August   17,   2021   (Doc.

48)("Reconsideration MOO").  Companion Life requested that the Court reconsider its conclusion

that Companion Life's determination that Chandhok was no longer disabled as of July 5, 2016,

was arbitrary and capricious.  See Reconsideration MOO, at *8.  The Court concluded that

Companion Life did not present evidence to show that the Court had misapprehended the facts, a

party's position, or controlling law, and instead repackaged a flawed argument and applied it to a

new disability date to avoid reconsideration of its original denial of Chandhok's claim.  See

Reconsideration MOO, at *19-22.  The Court, accordingly, denied Companion Life's Motion to

Reconsider.  See Reconsideration MOO, at *22.

**1.      The Motion.**

Chandhok filed his first Motion on September 17, 2020.  See Motion at 1.  Chandhok

argued in this Motion that he was "eligible for an award of attorney's fees because he achieved

some degree of success in obtaining a remand."  Motion at 1.  Chandhok contends that he

"persuaded the court this plan administrator failed to comply with ERISA guidelines and failed to

grant him the review he was entitled to."  Motion at 2.  Chandhok concludes that the "court may

award a fee if merited and may find merit in the remand itself given the scope of the issues decided

in Plaintiff's favor in the remand order."  Motion at 3.  Accordingly, in this request Chandhok

sought $37,411.05 in reasonable attorney's fees and costs.  See Motion at 3.

      2.    **The Response**.

      Companion Life responds to the Motion.  See Defendant's Brief in Opposition to Plaintiff's

Petition for Attorney's Fees, filed Sept. 29, 2020 (Doc. 37)("First Response").  Companion Life

argues that Chandhok's original petition for attorney's fees is deficient, because: (i) it does not

comply "with the D.N.M.LR-Civ 54.5(b), because it did not include 'a supporting brief and

evidence (affidavits and time records)'"; and (ii) it ignores the test that the Tenth Circuit follows

when deciding whether to award attorney's fees.  First Response at 1.  Companion Life further

argues: (i) that Chandhok has not achieved success on the merits; (ii) that Chandhok's requested

fees are unreasonable; and (iii) that Chandhok is unable to seek fees for work done before litigation.

See First Response at 3-6.

      Companion Life insists that Chandhok has not followed D.N.M.LR-Civ. 54.5(b) for

seeking fees, which requires "a party seeking fees [to] 'submit a supporting brief and evidence

(Affidavits and time records).'  The Local Rule also requires an attorney seeking fees to keep

concurrent time records."  First Response at 2 (quoting D.N.M.LR-Civ. 54.5(b)).  Companion Life

argues that Chandhok's Motion does not include a brief and "fails to set forth in sufficient detail

the bases for fee claim."  First Response at 2.  Companion Life explains that "no statement" is

made "anywhere that the fees referenced were maintained concurrently," and notes entries in

Chandhok's invoice that span days and lack specificity.  First Response at 2-3, 5-6.  From this

alleged lack of specificity, Companion Life contends that Chandhok's proposed fees are excessive,

and makes specific reference to Chandhok's attorney spending a collective, and seemingly double-billed, 48.8 hours on writing an opening brief.  See First Response at 7.  Companion Life concludes that the Court should not award fees or, in the alternative, should reduce the fee award substantially, because Chandhok did not comply with the Local Rules.  First Response at 3, 7.

Companion Life then insists that Chandhok did not achieve any degree of success on the merits.  See First Response at 3.  Companion Life notes that the Supreme Court states in Hardt that it "need not decide today whether a remand order, without more, constitutes 'some success on the merits' to make a party eligible for attorney's fees.'"  First Response at 3 (quoting Hardt, 560 U.S. at 256).  Further, Companion Life asserts that the facts in Hardt are different, because, here, the Court ordered a remand, and did not, as in Hardt, find "'compelling evidence that Ms. Hardt is totally disabled because of her neuropathy," and instruct the insurance company to "address the deficiencies" in its review.  First Response at 3 (quoting Hardt, 560 U.S. at 256).

Companion Life maintains that the "'lodestar amount'" of Chandhok's fee is unreasonable, because Chandhok's counsel has not "prov[en] hours by submitting meticulous, contemporaneous time records indicating all hours for which compensation is requested and how those hours were allotted to specific tasks."  First Response at 4 (citing Case v. Unified School Dist., No. 233, 157 F.3d at 1250).  Companion Life also alleges that Chandhok's attorney has not exercised "'billing judgment' which consists of removing hours that were not spent reasonably.  Counsel should also exclude fees that are excessive, redundant or otherwise unnecessary."  First Response at 4 (citing Hensley v. Eckerhart, 461 U.S. 242, 434 (1983); Case v. Unified School Dist., No. 233, 157 F.3d at 1250).  Companion Life concludes that Chandhok has made no effort to ensure that the attorney's fees amount he is requesting is reasonable.  See First Response at 4.

Companion Life notes that there is no Tenth Circuit decision holding that attorney's fees

for prelitigation work are available in ERISA actions.  See First Response at 4.  Companion Life argues that the Court should heed the precedent of seven separate United States Courts of Appeals in interpreting the language of ERISA's fee-shifting provision -- "any action," 29 U.S.C. § 1132(g)(1) -- to connote "a formal adversarial proceeding under the jurisdiction of a court of law."  First Response at 5 (quoting Peterson v. Cont'l Cas. Co., 282 F.3d at 119).  Companion Life notes that Chandhok's Motion contains "numerous entries related to claim exhaustion for which fees may not be awarded."  First Response at 5.  Companion Life repeats that these entries exist in Chandhok's invoice from July 22, 2016, and run through September 4, 2018, when Chandhok exhausted administrative remedies.  See First Response at 5.  Companion Life concludes that there are 14.2 hours of prelitigation activity for which the Court may not award fees.  See First Response at 5.

    **3.**    **The Hearing.**

The Court held a hearing on October 5, 2020.  See Clerk's Minutes at 1.  Chandhok presented argument on the Motion.  See Draft Transcript of Hearing at 40:25 (taken Oct. 5, 2020)(Rawley)("Tr.").[8]  Chandhok argued that he achieved success on the arguments presented in this case, and that, even if the Court reconsiders its conclusion related to the end of disability on July 5, 2016, he still has achieved success in "multiple contentions."  Tr. at 42:6-9 (Rawley).  Chandhok argued that he has achieved "some measure of success," which warrants attorney's fees, because the Court has concluded that Companion Life's decisions are arbitrary and capricious as related to (i) the date of Chandhok's initial disability; (ii) Chandhok's disability ending on July 5, 2016; and (iii) concluding that Chandhok did not suffer from a mental impairment.  Tr. at 42:14-

---

[8]The Court's citation refers to the unedited draft transcript.  Accordingly, page and line numbers are subject to slight change in the final edited version.

43:20 (Rawley).  Chandhok insisted that attorney's fees are warranted, because Companion Life did not reconsider its decisions, and because "it appears as though they feel that they don't even need to review the other records because the records they have are sufficient, and that if they do review them they are not material, not relevant or not strong enough to warrant anything."  Tr. at 45:20-25 (Rawley).

Chandhok noted that Companion Life has agreed that an hourly rate for attorney's fees at $300.00 per hour is reasonable.  See Tr. at 46:17-19 (Rawley).  The primary issue, should attorney's fees be awarded, is the appropriate number of hours charged, because (i) Chandhok's attorney is being required to work more hours in response to Companion Life's Motion to Alter or Amend; and (ii) possible double billing for the hours Chandhok's attorney worked on the original brief.  See Tr. at 47:3-22 (Rawley).  Chandhok's attorney noted that the number of billable hours may be adjusted upward from the current 113 hours charged, because of the work to be done in response to Companion Life's Motion to Reconsider and that he has reduced his hours worked on the brief from forty-eight to forty.  See Tr. at 47:4-5; id. at 47:20-25 (Rawley).

Chandhok then turned to Companion Life's argument that Chandhok's attorney does not discuss any of the factors in Gordon v. United States Steel Corp., 724 F.2d 106 (10th Cir. 1983), regarding the award of attorney's fees and stated: "I believe that I cover them in my brief, but I might want to add a little bit to it if I can be allowed to file my memorandum with the additional time and the additional legal argument."  Tr. at 48:3-15 (Rawley).  Regarding these factors, Chandhok maintained that (i) Companion Life's reliance "on the one opinion that supports them and not give much consideration to the other opinions" constitutes bad faith, Tr. at 48:18-22 (Rawley); (ii) that Chandhok does not understand why the opposing party's ability to pay attorney's fees is a consideration in a long-term disability claim against an insurer, see Tr. at 29:2-

6 (Rawley); (iii) that Chandhok "would certainly hope" that an award of attorney's fees would deter others from acting similarly, Tr. at 49:6-11 (Rawley); and (iv) that the Court's decision "shows that we had a lot of merit to our position," Tr. at 50:4-7 (Rawley). Chandhok next maintained that an award of attorney's fees should account for billable hours worked before filing an ERISA claim in court, which would include fourteen hours that Chandhok's attorney worked before filing this case in federal court. See Tr. at 50:7-12 (Rawley).

Chandhok argued that cases in which awards of attorney's fees do not include time for work done before filing a petition in federal court are not like this action, because this action involves long-term disability, and thus, the Court should not subtract hours worked before the filing of this complaint in federal court. See Tr. at 51:15-25 (Rawley). Chandhok insisted that ERISA claims require "a lot of work pre-filing," and that "they have it all set up so that they will carefully work with the claimant to try to come to the right answer and avoid going to court." Tr. at 56:19-25 (Rawley). Chandhok continued that an ERISA action "should include the prelitigation fees because they are vital to the presentation of the case to the district court." Tr. at 56:4-6 (Rawley).

Chandhok concluded that he "would like to further brief this issue." Tr. at 57:15-17 (Rawley). Chandhok had not filed a reply brief to Companion Life's First Response, but had attempted to submit a new draft of his original Motion. See Tr. at 59:7-11 (Rawley). Chandhok argued that he should be allowed to redraft his original Motion, and urged the Court to allow this procedure and to allow Companion Life to respond to a new draft. See Tr. at 59:9-14 (Rawley).

Next, Companion Life responded to Chandhok's argument for attorney's fees. See Tr. at 59:21 (Bachrach). Companion Life argued that Chandhok has not submitted properly time records, because the records that he submitted were not filed contemporaneously. See Tr. at 60:4-10

(Bachrach).  Companion Life argued that, on this basis alone, the motion for attorney's fees "has

to be denied."  Tr. at 60:10-12 (Bachrach).  Companion Life also asked that Chandhok not be

allowed to resubmit a brief that argues the factors for an award for attorney's fees from Gordon v.

United States Steel Corp., because he waived that argument by failing to raise it in the initial brief

or in a reply brief.  See Tr. at 60:12-23 (Bachrach).  Companion Life argued that, because of these

defects, the motion either should be denied or "punted down the road."  Tr. at 61:2-6 (Bachrach).

Companion Life maintained that many other Courts of Appeals state clearly that pre-

litigation fees are not available in motions for attorney's fees in ERISA actions, and that the Tenth

Circuit is unlikely to conclude otherwise.  See Tr. at 62:7-11 (Bachrach).  Companion Life argued

that, even if the Court may award fees, the number of hours is unreasonable, because Chandhok's

attorney spent an excessive amount of time on things, such as the brief.  See Tr. at 64:19-25

(Bachrach). The Court concluded the hearing, noting that it "gave a lot of thought to this case,"

and would need time to reach a decision.  Tr. at 68:10-13 (Court).  The Court allowed Chandhok's

attorney to submit additional files regarding attorney's fees for prelitigation activity in the course

of exhausting administrative remedies and stated that, if Companion Life "needs or wants to

respond to anything that Mr. Rawley files, you're welcome to do so."  Tr. at 69:3-5 (Court).

### 4.      Chandhok's Updated Memorandum.

On November 24, 2020, Chandhok filed an updated brief.  See Memo. at 1.[9]  Chandhok

urges the Court to award attorney's fees, because: (i)  he has achieved some success on the merits

in this case; (ii)  he has demonstrated that a majority of the factors considered in an ERISA action

---

[9]The Court will reference primarily the updated briefing throughout this opinion, because (i) it contains a thorough discussion of all relevant issues; and (ii) Companion Life took the opportunity to respond to Chandhok's updated briefing, and its reference does not disadvantage Companion Life.

point to the awarding of fees; and (iii) his attorney's fees and hours are reasonable and well-documented.  See Memo. at 1-4.  Chandhok insists that an award of attorney's fees should include fees for prelitigation activity -- before the exhaustion of administrative remedies.  See Memo. at 4.

Chandhok argues that an award of attorney's fees is appropriate, because, like the plaintiff in Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242 (2010)("Hardt"), he has achieved "some success on the merits."  Memo. at 2-3.  Chandhok maintains that he "achieved success in many of his contentions," including: (i) the conclusion that "the policy period for eligibility had not expired on his last day of work"; (ii) that Companion Life "had not adequately investigated" Chandhok's disability claim; and (iii) that Companion Life "failed to evaluate medical evidence of physical and mental disability after receiving it, in concluding he was no longer disabled after July 5, 2016." Memo. at 2.  Chandhok analogizes his success to the plaintiff in Hardt, stating that, like in Hardt, "Mr. Chandhok persuaded the court this plan administrator failed to comply with ERISA guidelines and failed to grant [Chandhok] the review he was entitled to," and thus, remanded the case to the private insurer.  Memo. at 3.  Chandhok states that, in Hardt, "a similar strong remand was deemed some success-on-the-merits and the court affirmed the district court's award of fees, expressly without deciding 'today whether a remand order, without more, constitutes' some success on the merits."  Memo. at 3 (quoting Hardt, 560 U.S. at 256).  Chandhok urges the Court to apply Hardt's success-on-the-merits standard and not apply the factors in Rueckelshaus v. Sierra Club, 463 U.S. 680 (1983), because "there is no reason to apply . . . factors from a Clean Air Act case to an ERISA case."  Memo. at 3 (citing Hardt, 560 U.S. at 257 (Stevens, J., concurring)).

Next, Chandhok discusses factors from the United States Court of Appeals for the Tenth Circuit's opinion in Eaves v. Penn, 587 F.2d 453, 456 (10th Cir. 1978).  Chandhok describes these factors as "(i) parties' culpability, (ii) capacity to pay fees, (iii) deterrence, (iv) general benefit to

others, and (v) relative merits."  Memo. at 3 (citing Eaves v. Penn, 587 F.2d at 456).  Chandhok argues that, in this case, "there is some culpability in the refusal to consider contrary medical opinions of disability, the unreasonable policy interpretation Mr. Chandhok was not covered in March of 2016, and failure to investigate his claim that his supervisor sent him home disabled." Memo. at 3.  Chandhok asserts that "[c]ertainly, Insurer can pay fees."  Memo. at 3.  Chandhok then speculates that it is "likely there would be deterrence from the wrong approach to assessment [of disability claims], rejected here by The Court."  Memo. at 3.  On the fourth consideration, Chandhok notes that whether this case contributed to the "jurisprudence of ERISA disability litigation" or to the greater public's general benefit "is at best undetermined."  Memo. at 4. Chandhok concludes this discussion of factors, stating "the relative merits of the parties['] position factor favors Plaintiff per this Court's decision."  Memo. at 4.

Chandhok next argues that the fees that he is requesting are reasonable, and reflect the hours and services rendered "based on contemporaneous notations of time spent on the legal service."  Memo. at 4.  Chandhok notes that he corrected errors from the previous billing statement in this new memorandum to fix "overlapping billing for final brief preparation."  Memo. at 1. Chandhok, in addition to his memorandum, files an exhibit outlining the fees that he seeks.  See Invoice for Time for Services to Chandhok at 1-11, filed November 24, 2020 (Doc. 39-2)("Invoice").  In total, Chandhok requests attorney's fees for 183.1 hours of work at an hourly rate of $300.00, plus tax at a general rate of State gross receipts taxation of 7.875%, and requests costs of filing fees, service of process, and printing of transcripts, all which totals $59,255.74 in attorney's fees and costs.  See Invoice at 10.  Chandhok states that he spent 161.9 hours during litigation in federal court and 21.2 hours in the pre-litigation stages of Chandhok's benefit-claim appeal.  See Invoice at 10.  Chandhok notes that the "parties have stipulated to the hourly rate of

$300 per hour, [being] reasonable in this matter."  Memo. at 22.

Chandhok devotes a large part of the memorandum to discussing whether the Court may award attorney's fees before the start of litigation in federal court.  See Memo. at 4-22.  Chandhok notes that the Tenth Circuit "has not yet addressed this precise issue on an ERISA case."  Memo. at 4.  Chandhok cites the Supreme Court of the United States of America's opinions in both New York Gaslight Club, Inc. v. Carey, 447 U.S. 54 (1980), and Pennsylvania v. Delaware Valley Citizen Counsel for Clean Air, 478 U.S. 546 (1986)("Delaware Valley"), to support his argument that the Court should award attorney's fees for work done outside of a case's federal litigation stages, because a primary concern of an award of attorney's fees is to "'promote citizen enforcement of important federal policies."  Memo. at 9 (quoting Delaware Valley, 478 U.S. at 560).  Chandhok also insists that these precedents support the contention that courts should not read the word "action" in ERISA's fee-shifting provision to connote only litigation actions before a court's jurisdiction.  Memo. at 8.  Chandhok then proposes that ERISA proceedings are "similar to the framework of the Social Security Agency," and that, in Social Security Administration proceedings, attorney's fees can be awarded for time spent in the agency administrative review, and not only for fees from litigation.  Memo. at 9.

Chandhok uses these interpretations of the Supreme Court's precedent to then catalog cases from several of the United States Courts of Appeals and discount their respective conclusions that attorney's fees are not awardable for pre-litigation work.  See Memo. at 10-22.  Chandhok discusses Peterson v. Cont'l Cas. Co., 282 F.3d 112 (2d Cir. 2002), in which the United States Court of Appeals for the Second Circuit held that attorney's fees are recoverable only for work done "after a district court has assumed jurisdiction over a case," basing its conclusion on the word "action" which the Second Circuit interprets to "'strongly imply' formal proceedings."  Memo. at

10 (quoting Peterson v. Cont'l Cas. Co., 282 F.3d at 119-20).  Chandhok asserts that what the Second Circuit "fails to do is realize that [Delaware Valley, 478 U.S. at 560] negates reliance on 'text,' and the claimed 'statutory scheme' of ERISA as support for interpretation of the fee statute." Memo. at 11 (no citation for quotation).  Chandhok argues that the central task is to "evaluate the issue of fee for such proceedings based on the relationship of the work [done in administrative proceedings] to the district court action."  Memo. at 11.  Chandhok proposes that the Second Circuit, the United States Court of Appeals for the Fourth Circuit, the United States Court of Appeals for the Sixth Circuit, the United States Court of Appeals for the Eighth Circuit, and the United States Court of Appeals for the Ninth Circuit all misinterpret Supreme Court precedent. See Memo. at 13-20.

Chandhok urges the Court to view two Tenth Circuit cases as guidance in determining whether prelitigation attorney's fees are awardable.  Memo. at 12.  Chandhok first cites Case v. Unified School District, No. 233, 157 F.3d 1243 (10th Cir. 1998), which allowed for the collection of attorney's fees for work done before recruiting plaintiffs in a case in a civil rights suit.  See Memo. at 12.  Chandhok also cites McGee v. Equicor Equitable HCA Corp., 953 F.2d 1192 (10th Cir. 1992), an ERISA disability case where the claimant did not have an attorney's help in the prelitigation stage of benefit appeals.  See Memo. at 12.  Chandhok references this case as support for the "need to encourage and pay attorneys to provide their services prelitigation," but notes that the Tenth Circuit "did not discuss this issue in affirming an award of fees."  Memo. at 13.

### 5.    **Companion Life's Second Response.**

Companion Life responds to Chandhok's updated briefing of the pre-litigation fees issue. See Defendant's Brief in Opposition to Plaintiff's Motion for an Award of Attorney's Fees and

Costs, filed Dec. 7, 2020 (Doc. 40)("Second Response").[10]  Companion Life notes its intention to reincorporate many of its arguments from its First Response.  See Second Response at 1. Companion Life devotes most of the Second Response to the pre-litigation fees issue, addressing the Court of Appeals decision that Chandhok raises, noting that each Court of Appeals that has considered the precedent Chandhok uses to argue for an award of prelitigation fees has concluded that attorney's fees are unavailable for prelitigation activity.  See Second Response at 1-11. Companion Life looks to each of the seven Courts of Appeals that address the issue of whether pre-litigation fees are available and notes how these circuits distinguish ERISA's fee shifting statute from Delaware Valley and  New York Gaslight Club, Inc. v. Carey, by looking both to ERISA's plain language and to the purpose of ERISA not being supportive of injecting attorney's into private administrative proceedings.  See Second Response at 3-9. Companion Life concludes this issue, noting that "[a]s he recognizes . . . every circuit court to answer [whether attorney's fees are available for prelitigation activity] has concluded that those fees may not be awarded.  And every argument now raised by Plaintiff was previously considered and rejected by those courts." Second Response at 11.

6.    **The Reply**.

Chandhok replied to Companion Life's Second Response on December 18, 2020.  See Reply Regarding Attorney's Fees, filed December 18, 2020 (Doc. 41)("Reply").  In the reply, Chandhok argues that Companion Life has merely recited the holdings of the seven Courts of Appeals that have held that attorney's fees for pre-litigation work are not available and has not responded substantively to Chandhok's arguments that these decisions are incorrect.  See Reply at

---

[10]The Court will reference both briefs in response to Chandhok's Motion in this procedural background, because the Court gave Chandhok leave to amend his brief to include discussion of the pre-litigation fee award issue.

2-4.  Chandhok maintains that the Courts of Appeals misapplied the <u>Delaware Valley</u> precedent, and that Companion Life has made "little argument as to each case's soundness, only applause." Reply at 4.  Chandhok concludes that his "fees are accounted for, services and dates are specified, and time is well spent, without puffing.  The only genuine question is whether to award fees for prelitigation work and briefing on that issue."  Reply at 4-5.

**7.      <u>Companion Life's Sur Reply</u>.**

On December 28, 2020, Companion Life filed an unopposed motion for leave to file a sur reply and the Court granted this motion on January 6, 2021.  <u>See</u> Defendant's Sur Reply in Response to Plaintiff's Motion for an Award of Attorney's Fees and Costs, filed December 28, 2020 (Doc. 42)("Sur Reply").  In its Sur Reply, Companion Life brings the Court's attention to a recent case in the United States Court of Appeals for the Ninth Circuit, <u>Castillo v. Metropolitan Life Insurance Co.</u>, 970 F.3d 1224, 1227 (9th Cir. 2020)("<u>Castillo</u>").  <u>See</u> Sur Reply at 1. Companion Life argues that this case reaffirms the Ninth Circuit's reasoning in <u>Cann v. Carpenters' Pension Trust Fund for Northern California</u>, 989 F.2d 313, 315 (9th Cir. 1993), which concluded attorney's fees are not available for work done before the start of litigation in a federal court, although in <u>Castillo</u> the relevant statutory provision is 29 U.S.C. 1132(a)(3) rather than 29 U.S.C. 1132(g)(1).  <u>See</u> Sur Reply at 2.

**<u>LAW REGARDING ATTORNEY'S FEES UNDER ERISA</u>**

"In any action under this subchapter by a participant, beneficiary, fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to any party." 29 U.S.C. § 1132(g)(1).  The Tenth Circuit has held: "A fee claimant need not be a prevailing party to be eligible for an award of attorney's fees and costs under ERISA."  <u>Cardoza v. United of Omaha Life Ins. Co.</u>, 708 F.3d 1196, 1207 (10th Cir. 2013)(citing <u>Hardt v. Reliance Standard Life Ins. Co.</u>, 560 U.S. 242 (2010)[("<u>Cardoza</u>")].  Instead, a district court has the discretion to award fees

"as long as the fee claimant has achieved 'some degree of success on the merits.'" <u>Cardoza</u>, 708 F.3d 1196, 1207 (10th Cir. 2013)(quoting <u>Hardt</u>, 560 U.S. at 255).  See <u>Lightfoot v. Principle Life Ins. Co.</u>, 547 F. App'x 864, 866 (10th Cir. 2013).  In <u>Hardt</u>, the Supreme Court of the United States of America affirmed that, in awarding fees under § 1132(g)(1), a "'judge's discretion is not unlimited.'"  <u>Hardt</u>, 560 U.S. at 254-55.  Nevertheless, the Supreme Court discounted the application of a five-factor fee awarding test,[11] holding that "the five factors bear no obvious relation to § 1132(g)(1)'s text or to our fee-shifting jurisprudence, they are not required for channeling a court's discretion when awarding fees under this section."  <u>Hardt</u>, 560 U.S. at 255. The Supreme Court, accordingly, held that the requirement of "some degree of success on the merits" is not satisfied "by achieving 'trivial success on the merits' or a 'purely procedural victory.'" <u>Hardt</u>, 560 U.S. at 255 (quoting <u>Ruckelshaus v. Sierra Club</u>, 463 U.S. 680, 688 n.9 (1983)("<u>Ruckelshaus</u>")).  <u>Accord</u> <u>Carlile v. Reliance Standard Life Ins. Co.</u>, 988 F.3d 1217, 1230 (10th Cir. 2021)(same).  The requirement may be satisfied "if the court can fairly call the outcome of the litigation some success on the merits without conducting a 'lengthy inquiry into the question whether a particular party's success was 'substantial' or occurred on a 'central issue.'"  <u>Hardt</u>, 560 U.S. at 255 (quoting <u>Ruckelshaus</u>, 463 U.S. at 688 n.9).

The Tenth Circuit has set forth a five-factor test that "a district court may consider in deciding whether to exercise its discretion to award attorney's fees and costs in an ERISA case." <u>Cardoza</u>, 708 F.3d at 1207.  The Tenth Circuit notes that the Supreme Court did not conclude "that

---

[11]The Supreme Court identifies these five factors as "'(1) the degree of opposing parties' culpability or bad faith; (2) ability of opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5)  the relative merits of the parties' positions.'"  <u>Hardt</u>, 560 U.S. at 249 n.1 (quoting <u>Quesinberry v. Life Ins. Co. of North Am.</u>, 987 F.2d 1017, 1029 (4th Cir. 1993)).

district courts are precluded from considering the five factors.  To the contrary, the court explained

that, once a fee claimant shows that he has achieved some success on the merits 'and thus becomes

eligible for a fees award under § 1132(g)(1), a court may consider the five factors.'"  Lightfoot v.

Principle Life Ins. Co., 547 F. App'x at 866 (quoting Hardt, 560 U.S. at 255 n.8).  Accordingly,

upon a showing of some success on the merits, a district court may then consider:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing
> party's ability to satisfy an award of fees; (3) whether an award of fees would deter
> others from acting under similar circumstances; (4) whether the party requesting
> fees sought to benefit all participants and beneficiaries of an ERISA plan or resolve
> a significant legal question regarding ERISA; and (5) the relative merits of the
> parties' positions.

Cardoza, 708 F.3d at 1207.  The Tenth Circuit instructs that "[n]o single factor is dispositive, and

a court need not consider every factor in every case."  Cardoza, 708 F.3d at 1207 (citing McGee

v. Equicor-Equitable HCA Corp., 953 F.2d 1192, 1209 n.17 (10th Cir. 1992)).   Similarly,

concluding that a claimant achieved some success on the merits is not dispositive to determining

a fees award to be appropriate.  See Lightfoot v. Principle Life Ins. Co., 547 F. App'x at 866-67

(holding that a district court did not abuse its discretion by not awarding attorney's fees after a

review of the five factors, despite concluding that the claimant had achieved some success on the

merits).

     If a district court determines that a fees award is appropriate, it next must assess whether

the requested award is for "reasonable attorney's fees and costs of action."  29 U.S.C. § 1132(g)(1).

"To determine the reasonableness of a fee request, a court must begin by calculating the so-called

'lodestar amount' of a fee, and a claimant is entitled to the presumption that this lodestar amount

reflects a 'reasonable' fee."  Robinson v. City of Edmond, 160 F.3d 1275, 1281 (10th Cir.

1998)(quoting Delaware Valley, 478 U.S. at 563-65).  The lodestar is "'the number of hours

reasonably expended on the litigation multiplied by a reasonable hourly rate,' which produces a

presumptively reasonable fee that may in rare circumstances be adjusted to account for the presence of special circumstances." Anchondo v. Anderson, Crenshaw & Assoc., LLC, 616 F.3d 1098, 1102 (10th Cir. 2010)(quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)); Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 543-44 (2010). "'The party requesting attorney fees bears the burden of proving' the two components used to calculate the fee award: (i) 'the amount of hours spent on the case'; and (ii) 'the appropriate hourly rates.'" New Mexico v. Valley Meat Co., LLC, 2015 WL 9703255, at *22 (D.N.M. 2015)(Browning, J.)(quoting United Phosophorus, Ltd. v. Midland Fumigant, Inc., 205 F.3d 1219, 1233 (10th Cir. 2000)). Once the court makes these two determinations, the fee "claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee." Robinson v. City of Edmond, 160 F.3d at 1281.

"To determine what constitutes a reasonable rate, the district court considers the prevailing market rate in the relevant community." New Mexico v. Valley Meat Co., LLC, 2015 WL 9703255, at *23 (quoting Lippoldt v. Cole, 468 F.3d 1204, 1224-25 (10th Cir. 2006)). See Malloy v. Monahan, 73 F.3d 1012, 1018 (10th Cir. 1996). The party entitled to fees must provide the district court with sufficient information to evaluate the prevailing market rates. See Lippoldt v. Cole, 468 F.3d at 1225. Moreover, the party must also demonstrate that the rates are similar to rates for similar services by "lawyers of reasonably comparable skill, experience, and reputation" in the relevant community and for similar work. Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). See Delaware Valley, 483 U.S. 711, 725 (1987); Case v. Unified Sch. Dist. No. 233, 157 F.3d 1243, 1255-56 (10th Cir. 1998). Courts may also consider their own knowledge of market rates. See Lippoldt v. Cole, 468 F.3d at 1225. The party seeking fees "should submit evidence supporting the hours worked and rates claimed." Hensley v. Eckerhart, 461 U.S. at 434. Although "[t]here is no precise rule or formula," district courts have discretion to make an "equitable judgment" to

"eliminate" or "reduce" requested fees "to reflect a plaintiff's overall success level." Hensley v. Eckerhart, 461 U.S. at 436-37.  See General Protecht Grp., Inc. v. Leviton Mfg. Co., 122 F. Supp. 3d 1114, 1135 (D.N.M. 2015)(Browning, J.)("A district court may also make adjustments to the lodestar figure to reflect a plaintiff's overall success level."); Ysasi v. Brown, 2015 WL 403930, at *10, *15 (D.N.M. 2015)(Browning, J.)(reducing the award of attorney's fees to account for duplicity in billing, but not greatly because the case was more difficult than "a straight-forward excessive-force case").  A court may adjust the lodestar figure to reflect various factors, including the degree of success obtained, the significance of the legal issues involved, and the public interest advanced by the litigation.  See Farrar v. Hobby, 506 U.S. 103, 120-22 (1992).  In awarding fees, the district court should "provide a concise but clear explanation of its reasons for [a] fee award." Hensley v. Eckerhart, 461 U.S. at 438.

The Tenth Circuit in Garrett v. Principal Life Ins. Co., 557 F. App'x 734, 737-38 (10th Cir. 2014), declined to consider an argument regarding the award of attorney's fees for work done before the start of formal litigation because of the Appellant's failure to properly cite to the appellate record.  The Courts of Appeals that have addressed the issue agree that fees incurred for work done exhausting administrative proceedings -- before the start of litigation in a United States District Court -- are not compensable.  See Kahane v. UNUM Life Ins. Co. of Am., 563 F.3d 1210, 1214-15 (11th Cir. 2009); Hahnemann Univ. Hosp. v. All Shore, Inc., 514 F.3d 300, 313 (3d Cir. 2008); Parke v. First Reliance Standard Life Ins. Co., 368 F.3d 999, 1010-11 (8th Cir. 2004); Rego v. Westvaco Corp., 319 F.3d 140, 150 (4th Cir. 2003); Peterson v. Cont'l Cas. Co., 282 F.3d 112, 119-121 (2d Cir. 2002); Anderson v. Proctor & Gamble Co., 220 F.3d 449, 452 (6th Cir. 2000); Cann v. Carpenters' Pension Trust Fund for Northern California, 989 F.2d 313, 315 (9th Cir. 1993). 29 U.S.C. § 1132(g)(1) reads: "In any action under this subchapter by a participant, beneficiary,

or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."  The Second Circuit, citing to three dictionaries, held that the word "action" when "[u]sed in a statute . . . traditionally connotes a formal adversarial proceeding under the jurisdiction of a court of law."  Peterson v. Cont'l Cas. Co., 282 F.3d at 119.  The Second and Third Circuits have explained that, because Congress chose not to use the "inclusive disjunctive phrase 'action or proceeding,'" Hahnemann Univ. Hosp. v. All Shore, Inc., 514 F.3d at 313, there is "strong evidence that Congress did not intend ERISA to have as broad a reach as Title VII," Peterson v. Cont'l Cas. Co., 282 F.3d at 121, and thus, that, unlike Title VII, attorney's fees are not recoverable for work done before formal litigation in an ERISA action,[12] see Hahnemann Univ. Hosp. v. All Shore, Inc., 514 F.3d at 313; Peterson v. Cont'l Cas. Co., 282 F.3d at 121.  The Fourth Circuit also discussed Congress' intent, and reasoned that it was Congress' "'desire not to create a system that is so complex that administrative costs, or litigation expenses, unduly discourage employers from offering welfare benefit plans in the first place.'"  Rego v. Westvaco Corp., 319 F.3d at 150 (quoting Varity Corp. v. Howe, 516 U.S. 489, 497 (1996)).  The Fourth Circuit explained that Congress intended for ERISA's administrative proceeding requirement to resolve most claims, and that injecting attorneys "into those administrative procedures . . . would establish a far higher degree of formality and lead to more protracted litigation in a great many cases," and thus, a fees award for this work would provide an improper incentive and cut against Congress'

---

[12]The Supreme Court in New York Gaslight Club, Inc. v. Carey, 447 U.S. 54 (1980), holds (i) that the "use of the broadly inclusive disjunctive phrase 'action or proceeding' indicates an intent to subject the losing party to an award of attorney's fees and costs that includes expenses incurred for administrative proceedings," New York Gaslight Club, Inc. v. Carey, 447 U.S. at 61-2; and (ii) that the legislative history and purpose makes clear that "Congress' primary purposes in enacting the section was to 'make it easier for a plaintiff of limited means to bring a meritorious suit,'" New York Gaslight Club, Inc. v. Carey, 447 U.S. at 63 (quoting 110 Cong. Rec. 12724 (1964)(remarks of Sen. Humphrey)), and thus, an award of attorney's fees helps to further the enforcement goals of Title VII.

purpose in enacting ERISA.  Rego v. Westvaco Corp., 319 F.3d at 150.

In addition to the Courts of Appeals, district courts in the Tenth Circuit also have concluded that fees are not available for work done while exhausting possible administrative remedies under ERISA.  See, e.g., Foust v. Lincoln Life Ins. Co., No. 17-cv-01208-TC, 2019 WL 6223822, *3 (D. Utah 2019)(Campbell, J.)("[T]he court concludes that administrative work preceding the action is not compensable under ERISA."); Cardoza v. United of Omaha Life Ins. Co., No. CV 09-1003 MV/WPL, 2012 WL 12903087, *3 (D.N.M. 2012)(Vazquez, J.)(reviewing Courts of Appeals' opinions to reach the conclusion that fees are not available for pre-litigation administrative proceedings); Cross v. Qwest Disability Plan, No. 08-cv-0516-PAB-KMT, 2010 WL 5476790, *6 (D. Colo. 2010)(Tafoya, J)("[F]ees for purely administrative work on the benefits determination concerning Plaintiff, including any appeals she may have submitted to the Plan, is not allowable."). The Court, as a matter of first impression concludes that 29 U.S.C. § 1132(g)(1), ERISA's fee shifting section, does not allow for fee recovery for work done in the exhaustion of administrative proceedings before the start of formal litigation in a United States District Court.  ERISA's plain language does not permit fee shifting for pre-litigation work, and, in the absence of an express statutory allowance of attorney's fees, the American Rule precludes the award of any attorney's fees.

The Court concludes that the Courts of Appeals are persuasive in their analysis of § 1132(g)(1).  The Court agrees that the plain meaning of 29 U.S.C. § 1132(g)(1) restricts the recovery of attorney's fees to work done in a "formal adversarial proceedings under the jurisdiction of a court of law," for three reasons.  Peterson v. Cont'l Cas. Co., 282 F.3d at 119.  First, the plain meaning of the word "action" refers to a proceeding before a court of law.  Peterson v. Cont'l Cas. Co., 282 F.3d at 119.  Second, the absence of the phrase "action or proceeding," in ERISA's text

-- which the Supreme Court, in <u>New York Gaslight Club, Inc. v. Carey</u>, 447 U.S. 54, 61 (1980),

holds allows fee recovery for administrative proceedings -- demonstrates that Congress did not

intend fees for administrative exhaustion to be recoverable under ERISA, <u>Hahnemann Univ. Hosp.</u>

<u>v. All Shore, Inc.</u>, 514 F.3d at 313.   Third, a consistent reading of the broader statutory scheme

supports concluding that the term "action" references only proceedings under an Article III court's

jurisdiction, because "Section 1132(e)[13] grants exclusive jurisdiction to the United States District

Courts over 'civil actions under this subchapter' . . . [and] grants concurrent jurisdiction to federal

and state courts over other types of 'actions,'" <u>Peterson v. Cont'l Cas. Co.</u>, 282 F.3d at 119.   <u>See</u>

<u>King v. Burwell</u>, 576 U.S. 473, 486 (2015)("[W]hen deciding whether the language is plain, we

must read the words 'in their context and with a view to their place in the overall statutory scheme.'"

(quoting <u>Food & Drug Admin. v. Brown & Williamson Tobacco Corp.</u>, 529 U.S. 120, 133 (2000)).

The Court is also persuaded by the Courts of Appeals' reasoning that Congress' intent and

purpose in passing ERISA counsels against awarding attorney's fees for pre-litigation work.   <u>See</u>,

<u>e.g.</u>, <u>Kahane v. UNUM Life Ins. Co. of Am.</u>, 563 F.3d at 1215 ("To provide for fee awards in pre-

litigation administrative proceedings would inject attorneys into those proceedings as a matter of

course and 'could severely undermine the congressional purpose.'")(quoting <u>Rego v. Westvaco</u>

<u>Corp.</u>, 319 F.3d at 150).   The Court agrees that "ERISA is characterized in part by a congressional

'desire not to create a system that is so complex that administrative costs, or litigation, expenses,

unduly discourage employers from offering welfare benefits.'" <u>Rego v. Westvaco Corp.</u>, 319 F.3d

at 150 (quoting <u>Varity Corp. v. Howe</u>, 516 U.S. at 497).   <u>See</u> 29 U.S.C. § 1001(a) ("[O]wing to

the inadequacy of current minimum standards, the soundness and stability of plans with respect to

---

[13]29 U.S.C. § 1132(e) grants "exclusive jurisdiction of civil actions" brought under ERISA
to the district courts of the United States.

adequate funds to pay promised benefits may be endangered.").   The Court concludes that encouraging lawyers' involvement in administrative proceedings, which are meant to settle many potential benefit claims, by awarding attorneys' fees, "would establish a far higher degree of formality and lead to more protracted litigation in a great many cases."   Rego v. Westvaco Corp., 319 F.3d at 150.   The Court agrees that a more adversarial environment in administrative proceedings would lead to an administrative proceedings system that is more complex and expensive, and thereby would "unduly discourage employers from offering welfare benefits," contrary to Congress' intent.   Varity Corp. v. Howe, 516 U.S. at 497.   If courts hold companies responsible for attorney's fees incurred during administrative proceedings, the added expense would "severely undermine the congressional purpose of promoting 'the soundness and stability of plans with respect to adequate funds to pay promised benefits.'"   Rego v. Westvaco Corp., 319 F.3d at 150 (quoting 29 U.S.C. § 1001(a)).   The Court agrees that most ERISA claims should be settled in the administrative review stage and that allowing attorney's fees during this process would cut against efficient administrative settlement.   Accordingly, the Court concludes that attorney's fees are unavailable for work completed before the initiation of judicial proceedings.

### LAW REGARDING ATTORNEY'S FEES UNDER THE AMERICAN RULE

"As a general rule, trial courts are without authority to award attorney's fees unless the right exists by contract or statute."   Paramount Pictures Corp. v. Thompson Theaters, Inc., 621 F.2d 1088, 1091 (10th Cir. 1980).   New Mexico also follows the "American Rule" with respect to attorney's fees.   Craft v. Sunwest Bank of Albuquerque, 84 F. Supp. 2d 1226, 1238-39 (D.N.M. 1999)(Black, J.); Monsanto v. Monsanto, 1995-NMCA-048, ¶ 7, 119 N.M. 678, 680-81, 894 P.2d 1034, 1037-38.   "The American Rule is shorthand for the general rule that in the absence of legislation providing otherwise, litigants must pay their own attorney's fees."   Christiansburg Garment Co. v. Equal Employment Opportunity Commission, 434 U.S. 412, 415 (1978).   See

Garcia v. Jeantette, 2004-NMCA-004, ¶ 16, 134 N.M. 776, 778, 82 P.3d 947, 950 ("[G]enerally a party may recover attorney fees only when authorized by statute, court rule, or an agreement expressly providing for their recovery.")(citing Monsanto v. Monsanto, 1995-NMCA-048, ¶ 7, 119 N.M. 678, 680-81, 894 P.2d 1034, 1037-38)); Craft v. Sunwest Bank of Albuquerque, 84 F. Supp. 2d at 1238-39 ("In the absence of statutory authority to the contrary, parties pay their own attorney's fees."); Credit Inst. v. Veterinary Nutrition Corp., 2003-NMCA-120, ¶ 38, 133 N.M. 248, 256, 62 P.3d 339, 347 ("As a general rule, litigants are responsible for their own attorney fees absent statutory authority or some other authority such as a contract allowing such fees.")(quoting Springer Group, Inc. v. Wittelsohn, 1999-NMCA-120, ¶ 23, 128 N.M. 36, 42, 988 P.2d 1260, 1265)).  Exceptions to the American Rule include: (i) statutory basis; (ii) enforceable contracts; (iii) willful violation of court order; (iv) bad faith action; and (v) litigation creating common fund for the benefit of others.  See E. Armata, Inc. v. Platinum Funding Corp., 887 F. Supp. 59, 594 (S.D.N.Y. 1995)(Patterson, J.)(citing Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 257-59 (1975)).

## ANALYSIS

The Court concludes that an award of attorney's fees is appropriate for work completed after this litigation began in district court, because: (i) Chandhok, in convincing the Court that his claim should be remanded to Companion Life for further consideration, has achieved "some degree of success on the merits," Hardt, 560 U.S. at 255; and (ii) the five factors that the Tenth Circuit employs to guide a court's discretion in awarding fees in an ERISA action weigh in favor of awarding attorney's fees, see Cardoza, 708 F.3d at 1207.  The Court also concludes, based on the parties' stipulation, that the reasonable rate to be factored into the lodestar amount to determine a reasonable amount of attorney's fees is $300.00 per hour.  See Memo. at 22; First Response at 8 n.21.  The Court will not, however, grant attorney's fees for all of the hours that Chandhok requests,

because Chandhok cannot recover fees for work done before the start of this litigation.  See, e.g.,

Rego v. Westvaco Corp., 319 F.3d at 150; Peterson v. Cont'l Cas. Co., 282 F.3d at 119.

Accordingly, the total number of reasonable hours is 144.14 hours, and thus, the Court will award

$43,242.00 in attorney's fees and $718.60 in costs, for a total award of $43,960.60.  The Court

also concludes that the American Rule does not preclude the award of attorney's fees in this matter,

because ERISA's fee shifting statute, see 29 U.S.C. § 1132(g)(1), statutorily authorizes the award

of attorney's fees, see Craft v. Sunwest Bank of Albuquerque, 84 F. Supp. 2d at 1238-39.  Section

1132(g) states: "In any action under this subchapter (other than an action described in paragraph

(2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable

attorney's fee and costs of action to either party."  29 U.S.C. § 1132(g)(1).  Chandhok, as a

participant,  is thus authorized by the statute to seek reasonable attorney's fees and costs.  See

29 U.S.C. § 1002(7) (defining participant).[14]

## I.   THE COURT WILL AWARD REASONABLE ATTORNEY'S FEES, BECAUSE CHANDHOK HAS ACHIEVED SOME SUCCESS ON THE MERITS.

"A fee claimant need not be a prevailing party to be eligible for an award of attorney's fees

and costs under ERISA."  Cardoza, 708 F.3d at 1207.  Instead, a fees award is appropriate "as long

as the fee claimant has achieved 'some degree of success on the merits.'"  Hardt, 560 U.S. at 245.

The Supreme Court in Hardt declined to "decide today whether a remand order, without more,

---

[14]The statute defines a participant as

> any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7).

constitutes 'some success on the merits' sufficient to make a party eligible for attorney's fees under § 1132(g)(1)."  560 U.S. at 256.  The Tenth Circuit, in an unpublished opinion, held that "we cannot say that a remand order alone constitutes some success on the merits."  Manna v. Phillips 66 Co., 820 F. App'x 695, 703 (10th Cir. 2020).[15]  The Court, taking note of previous decisions both inside and outside of the Tenth Circuit, concludes that remand to the ERISA plan administrator for further consideration constitutes "'some degree of success on the merits,'" and thus, that Chandhok is entitled to an award of reasonable attorney's fees.  Hardt, 560 U.S. at 245 (quoting Ruckelshaus, 463 U.S. at 688 n.9).

The Supreme Court in Hardt explains that:

> A claimant does not satisfy that requirement by achieving trivial success on the merits or a purely procedural victory but does satisfy it if the court can fairly call the outcome of the litigation some success on the merits without conducting a lengthy inquiry into the question whether a particular party's success was substantial or occurred on a central issue.

560 U.S. at 255.  In Hardt, the Supreme Court concludes that a district court's remand of a benefits

---

[15]Manna v. Phillips 66 Co., 820 F. App'x 695 (10th Cir. 2020) is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A)) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . And we have generally determined that citation to unpublished opinions is not favored.  However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that Manna v. Phillips 66 Co., and the other unpublished opinions cited herein, have a direct impact with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.  The Court concludes, however, that it will depart from Manna v. Phillips 66 Co., because the Supreme Court's jurisprudence and development of the "some degree of success on the merits" standard supports the conclusion that a remand after review of a case's merit is more than "trivial success on the merits, or purely procedural victories."  Ruckelshaus, 463 U.S. at 688 n.9.  See Hardt, 560 U.S. at 255.

determination to an ERISA plan administrator -- on the condition that, if the defendant administrator declined to reconsider its original denial of benefits within thirty days of the remand, the Court would enter judgment awarding benefits to the plan beneficiary -- constitutes achievement of "some degree of success on the merits." Hardt, 560 U.S. at 248, 255.  The district court, therefore, was within its discretion to award attorney's fees, despite there being no enforceable judgment in the beneficiary's favor.  See Hardt, 560 U.S. at 250, 255.  The Supreme Court has left to the district courts and Courts of Appeals the determination whether remand for the plan administrator's further consideration alone constitutes "some degree of success on the merits."  Hardt, 560 U.S. at 256.

The United States Courts of Appeals for the First, Sixth, and Ninth Circuits have held that remand to a plan administrator is sufficient to establish a degree of success on the merits that warrants an award of attorney's fees.  See, e.g., Gorbacheva v. Abbott Laboratories Extended Disability Plan, 794 F. App'x 590, 594 (9th Cir. 2019)("Gorbacheva")("By obtaining an initial remand for further consideration of her ERISA claim, Gorbacheva satisfied this hurdle . . . .");  Gross v. Sun Life Assurance Co. of Canada, 763 F.3d 73 (1st Cir. 2014)("Gross"); McKay v. Reliance Std. Life Ins. Co., 428 F. App'x 537, 547 (6th Cir. 2011)("McKay").  The United States Court of Appeals for the First Circuit explains that "courts concluding that remand . . . is enough have emphasized that a remand for further administrative proceedings commonly results from a substantive review of the evidence -- i.e., 'the court considers the merits of the case and reaches its conclusion on that basis.'"  Gross, 763 F.3d at 78 (quoting Scott v. PNC Bank Corp. & Affiliates Long Term Disability Plan, No. WDQ-09-3239, 2011 WL 2601569, at *8 (D. Md. 2011)(Grimm, J.)(emphasis added)).  The First Circuit reasons that the following elements are inherent to a remand order: "(1) a finding that the administrative assessment of the claim was in

some way deficient, and (2) the plaintiff's renewed opportunity to obtain benefits or compensation." Gross, 763 F.3d at 78. "Indeed, a remand for a second look at the merits of her benefits application is often the best outcome that a claimant can reasonably hope to achieve from the courts. To classify such success as a minimal or 'purely procedural victory' mistakes its importance." Gross, 763 F.3d at 78-79. The First Circuit concludes that, beyond mere remand, it had delivered the plaintiff a significant substantive victory in its interpretation of the standard of review that ensured she had achieved success to warrant attorney's fees. See Gross, 763 F.3d at 79-80.

The Court concludes that the First Circuit's reasoning, and the Sixth and Ninth Circuits' conclusions, are persuasive. See Gross, 763 F.3d at 79-80; Gorbacheva, F. App'x at 594; McKay, F. App'x at 547. The Court agrees that a remand to a plan administrator satisfies Hardt's "some degree of success on the merits" standard, because: (i) a remand is the result of a court's full review of the merits of a case; (ii) when a court remands a case, a court must conclude that some decision of the plan administrator was deficient and warrants reconsideration; and (iii) through obtaining a remand, the plan beneficiary or participant gains a substantial benefit in the form of a second look and renewed opportunity to receive their requested benefits. The Court therefore agrees with the First Circuit that calling such a success "minimal or 'purely procedural'" understates the importance of the remand, and the significance of the plan beneficiary's success in convincing the Court of the merits of his or her case. Gross, 763 F.3d at 78-79.

The Supreme Court's jurisprudence and development of the "some degree of success on the merits" standard supports the conclusion that a remand, after review of a case's merit is more than "trivial success on the merits, or purely procedural victories." Ruckelshaus, 463 U.S. at 688 n.9. See Hardt, 560 U.S. at 255. The Supreme Court in Ruckelshaus rejects the argument that a party that has lost an action could seek attorney's fees from the prevailing party when "appropriate,"

as the Clean Air Act § 307(f), 42 U.S.C. § 7607(f), authorizes.  See 463 U.S. at 691-93.  The
Supreme Court, instead, developed the "some degree of success on the merits" standard to guide
district courts' discretion and to "expand the class of eligible parties for fee awards from prevailing
parties to partially prevailing parties -- parties achieving some success, even if not major success."
Ruckelshaus, 463 U.S. at 688 (emphasis in original).  In applying this standard to the ERISA
context, the Supreme Court in Hardt notes that it is enough "if the court can fairly call the outcome
of the litigation some success on the merits without conducting a 'lengthy inquir[y] into the
question whether a particular party's success was 'substantial' or occurred on a 'central issue.'"
Hardt, 560 U.S. at 255 (quoting Ruckelshaus, 463 U.S. at 688 n.9).  The Supreme Court explains
that the defendant insurance company's argument -- that remand can never constitute "some
success on the merits" -- "misses the point," and that the beneficiary's "persuad[ing] the District
Court to find that 'the plan administrator has failed to comply with the ERISA guidelines' and
'that [the plaintiff] did not get the review to which she was entitled under the applicable law'"
meets the burden.  Hardt, 560 U.S. at 255 (quoting App. to Pet. for Cert. 48a).  The Court, therefore,
concludes that the "some degree of success on the merits" standard is met when a beneficiary
achieves a full remand of their claim for further consideration, because such an outcome is in
neither trivial nor purely procedural.

Consequently, an award of attorney's fees is warranted in Chandhok's case, because he has
achieved "some degree of success on the merits," Hardt, 560 U.S. at 255, because the Court
remanded the case "to Defendant Companion Life Insurance Company to determine Plaintiff Paul
Chandhok's impairment date, to reconsider its conclusion that Chandhok was not impaired on July
5, 2016, in light of Dr. Michael Garcia's August, 2016, comments, and to provide an explanation
for its decision to deny Chandhok's mental impairment claim."  MOO I, 478 F. Supp. 3d at 1179-

90.   In Chandhok's case, the Court has conducted a substantive review of the evidence in the administrative record and reached its conclusions, based on the merits, that: (i) Companion Life's conclusion that Chandhok was not disabled before March 15, 2016, is arbitrary and capricious; (ii) the policy insures Chandhok beyond his last day of work on March 4, 2016; (iii) Companion Life's conclusion that Chandhok's disability ended on July 5, 2016, is arbitrary and capricious; and (iv) Companion Life's conclusion that there is no support for Chandhok suffering from a mental or nervous impairment is arbitrary and capricious.  See MOO, 478 F. Supp. 3d at 1179-90. In remanding Chandhok's case to Companion Life for reconsideration, the Court concludes that Companion Life's original denials and subsequent appeals are deficient in their consideration of the evidence of disability and interpretation of policy language, and thus, that Chandhok deserves a "renewed opportunity to obtain benefits or compensation."  Gross, 763 F.3d at 78.  The Court, accordingly, concludes that Chandhok's success in convincing the Court to remand his claim to Companion Life neither is "trivial" nor a "purely procedural" victory, but instead constitutes "some degree of success on the merits," warranting an award of reasonable attorney's fees.  Hardt, 560 U.S. at 255.  See MOO, 478 F. Supp. 3d at 1179-90.

In Manna v. Phillips 66 Co., the Tenth Circuit held that mere remand, without more, could not constitute "some success on the merits."[16]   Manna v. Phillips 66 Co., 820 F. App'x at 703.

---

[16]Manna v. Phillips 66 Co. conflates the "some degree of success on the merits" test with the five factors that the Tenth Circuit has directed district courts to consider in guiding their discretion in the award of attorney's fees and costs, when it says that, ["[t]o decide whether a fee claimant achieved that success, a district court 'may consider' five different factors."  Manna v. Phillips 66 Co., 820 F. App'x at 702 (quoting Cardoza, 708 F.3d at 1207).  The Supreme Court in Hardt, while considering the application of the five factors in deciding whether to award attorney's fees, explains that, "[b]ecause these five factors bear no obvious relation to § 1132(g)(1)'s text or to our fee-shifting jurisprudence, they are not required for channeling a district court's discretion when awarding fees under this section."  Hardt, 560 U.S. at 254-55.  The Supreme Court notes expressly that consideration of the five factors and whether a party has achieved "some degree of

Nevertheless, beyond a mere remand, the Court concludes that its policy language interpretation regarding the dates of Chandhok's coverage, coupled with its substantive determinations that Companion Life's conclusions are arbitrary and capricious, constitutes substantial success on the merits of Chandhok's disability claim.  Accordingly, if the Court applied Manna v. Phillips 66 Co., the result in its MOO I would constitute success on the merits sufficient to support an award of fees for Chandhok.  See MOO, 478 F. Supp. 3d at 1179-90.  The Court concludes that, in holding that the policy covers Chandhok's March 15, 2016, impairment diagnosis, it made a "substantive ruling . . . that altered the dynamic between" Companion Life and Chandhok "in the subsequent proceedings."  Gross, 763 F.3d at 79.  The Court concludes that, at a minimum, its MOO should ensure that Companion Life determines that Chandhok was eligible for benefits and disabled from at least March 15, 2016, through July 5, 2016, and concludes that this outcome constitutes "some degree of success on the merits" beyond remand to the plan administrator that ensures Chandhok is entitled to an award of attorney's fees.[17]  Hardt, 560 U.S. at 255.  The Court maintains its original

_____

success on the merits" are two distinct inquiries, when it states: "We do not foreclose the possibility that once a claimant has satisfied this requirement, and thus becomes eligible for a fees award under § 1132(g)(1), a court may consider the five factors adopted by the Court of Appeals."  Hardt, 560 U.S. at 255 n.8.  This conflation contributes to the Tenth Circuit's conclusion in Manna v. Phillips 66 Co. that remand alone is not enough to constitute some degree of success on the merits.  See Manna v. Phillips 66 Co., 820 F. App'x at 702-03 (distinguishing cases where remand and an additional conclusion that a party acted in bad faith or with culpability, the first of the five factors, is enough to constitute "some degree of success on the merits," while mere remand in the present case, without explaining how any of the Cardoza factors would support a fee award, is not enough).  The Court, if it were writing on a clean slate, would conclude that the Tenth Circuit misapplied the Supreme Court's holding in Hardt and Ruckelshaus, because the Supreme Court construed § 1132(g)(1) to allow fees for a broad range of success on the merits, only prohibiting fees for "trivial success" or "purely procedural victory."  Hardt, 560 U.S. at 255 (quoting Ruckelshaus, 463 U.S. at 688 n.9).  The Court, therefore, believes that Chandhok is entitled to an award of attorney's fees based on the remand of his case after a review of the merits alone.

[17]The Court concludes that the First Circuit's reasoning is persuasive in this case.  See Gross, 763 F.3d at 78-79.  Had Chandhok not achieved more substantial success in this policy language interpretation victory, but instead only the remand for reconsideration of arbitrary and

conclusion that Companion Life's determination that Chandhok's disability ended on July 5, 2016, is arbitrary and capricious, and declines to alter or amend that conclusion.  See Reconsideration MOO, at *20-22.

## II.   THE COURT WILL AWARD REASONABLE ATTORNEY'S FEES, BECAUSE THE TENTH CIRCUIT'S FIVE FACTORS WEIGH IN FAVOR OF AWARDING FEES TO CHANDHOK.

In addition to considering whether a party has achieved "some degree of success on the merits," the Tenth Circuit has held that district courts may consider five factors to determine if an award of attorney's fees and costs is appropriate.  Cardoza, 708 F.3d at 1207.  These factors include:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of fees; (3) whether an award of fees would deter others from acting under similar circumstances; (4) whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

Cardoza, 708 F.3d at 1207.  The Court concludes that: (i) Companion Life's determinations regarding Chandhok's disability demonstrate a degree of culpability, because it applies the wrong criteria to Chandhok's disability claim, misconstrues the Court's reasoning, does not take into account medical professionals' opinions, and develops post hoc rationales to justify its continued denial of coverage; (ii) Companion Life is capable of satisfying an award of fees; (iii) an award of fees encourages other ERISA plan administrators to consider fully the evidence before them in disability determinations, and to examine contradictory evidence in a systematic and well-documented way, rather than dismiss relevant medical evidence without proper justification;

capricious determinations that Companion Life made, the Court, nevertheless, believes this alone would constitute an achievement of "some success on the merits" that would warrant the award of reasonable attorney's fees.  Hardt, 560 U.S. at 255.  Consequently, the Court disagrees with the Tenth Circuit's holding in Manna v. Phillips 66 Co., that "a remand order alone [cannot] constitute[] some success on the merits."  820 F. App'x at 703.  For the reasons outlined in this opinion, therefore, this unpublished opinion does not persuade the Court.

(iv) Chandhok does not seek to benefit all plan participants and beneficiaries, or to resolve a significant legal question related to ERISA; and (v) Chandhok has demonstrated the merits of his position through this case, while Companion Life continues to press a policy coverage argument that lacks a sound basis in the applicable law and relative facts to avoid full reconsideration of Chandhok's disability claim. Accordingly, the Court, after weighing these factors, concludes that a majority weigh in favor of an award of reasonable attorney's fees and costs to Chandhok.

### A.    COMPANION LIFE'S DETERMINATIONS REGARDING CHANDHOK'S DISABILITY CLAIM DEMONSTRATE A DEGREE OF CULPABILITY, BECAUSE THEY EXHIBIT A LACK OF DILIGENCE REGARDING CHANDHOK'S INTERESTS.

The Tenth Circuit has not described "culpability or bad faith," in this context, so the Court examines definitions and persuasive authority to determine what conduct constitutes culpability or bad faith by an opposing party. Cardoza, 708 F.3d at 1207. Importantly, the Tenth Circuit's use of the disjunctive "or" sets two different measurable standards by which a court may judge a party's conduct during an ERISA appeal and subsequent litigation. Cardoza, 708 F.3d at 1207. The Court, therefore, will not "collapse[e] 'bad faith or culpability' into a single test." Foltice v. Guardsman Products, Inc., 98 F.3d at 940 (Wiseman, J., dissenting). "Whereas bad faith is subjective and requires proof of motives that discovery in a beneficiary claim is unlikely to generate, culpability is objective and more easily proven from discernable observations." Foltice v. Guardsman Products, Inc., 98 F.3d at 941 (Wiseman, J., dissenting). Two separate inquiries are appropriate because if the standards are collapsed into one, a likely result is conflicting interpretations of the standard with inconsistent outcomes for parties dependent upon whether a particular court is applying a stringent bad faith standard or looking primarily to whether culpability is evidenced. Separating the inquiries results in clarity and predictability for parties and takes account of the factor's disjunctive wording, bringing proper effect to the Tenth Circuit's

test.  The Court, therefore, assesses both Companion Life's degree of culpability and bad faith, and will not conduct this inquiry as though the two are synonymous.

First, the Court concludes that Companion Life was culpable, because it misconstrued the record, raised discredited arguments to avoid payment, applied the wrong criteria to assess disability, ignored the opinions of Chandhok's treating physician, and proposed a post hoc rationale to justify its denial and conclusions regarding Chandhok's claims.  See Cardoza, 708 F.3d at 1207; Reconsideration MOO, at *22.  Black's Law Dictionary defines culpability as "moral blameworthiness; the quality of being culpable," Culpability, Black's Law Dictionary (10th ed. 2014), and defines culpable as "1. Guilty; blameworthy.  2. Involving the breach of a duty," Culpable, Black's Law Dictionary (10th ed. 2014).  See Foltice v. Guardsman Products, Inc., 98 F.3d at 940 (Wiseman, J., dissenting)(no citation for quotation)(concluding that "the finding that the denial of benefits was 'erroneous, even arbitrary' is inherently a finding of culpability"); Werner v. Upjohn Co., Inc., 628 F.2d 848, 856-57 (4th Cir. 1980)(defining culpability as "implying that the act or conduct spoken of is reprehensible or wrong, but not that it involves malice or guilty purpose"). The Honorable Dale A. Kimball, United States District Judge for the District of Utah, concludes that a plan administrator "acted culpably by applying the wrong criteria in evaluating the medical necessity of C.F.'s residential care, ignoring the opinions of C.F.'s treating physicians, and proposing post hoc rationale to justify the denial of the Plaintiffs' claims." James F. ex rel. C.F. v. CIGNA Behavioral Health, Inc., No. CIV 09-0070 DAK, 2011 WL 2441900, *2 (D. Utah 2011)(Kimball, J.).[18]  The Court agrees with this interpretation of culpability,

_____

[18]The Tenth Circuit cited this case with favor in Manna v. Phillips 66 Co., concluding that the determination by the district court that the plan administrator had acted culpably provided additional support for an award of fees where, otherwise, the case resulted only in remand to the plan administrator.  See 802 F. App'x at 702-03.

because it recognizes that parties often may not act with malice or guilty purpose in denying claims for benefits, but nevertheless, may act in such a way that is wrong or irresponsible.  The Court concludes that the parties harmed by such actions should be allowed opportunity for redress, and the award of attorney's fees and costs is a proper route to do so.

Chandhok alleges that "there is some culpability in the refusal to consider contrary medical opinions of disability, the unreasonable policy interpretation Mr. Chandhok was not covered in March of 2016, [and] the failure to investigate his claim that his supervisor sent him home disabled." Memo. at 3.  The Court agrees that Companion Life acted culpably when it denied Chandhok's benefit claim, because Companion Life: (i) argues that Chandhok's continued work from the date of the purported injury on January 9, 2016, through March 4, 2016, is categorical proof that Chandhok was not disabled, an argument that the Court in its opinion noted that other courts have confronted and "rejected -- with noted disdain," MOO, 478 F. Supp. 3d at 1179; (ii) Companion Life's "strained" reading of the administrative record regarding Chandhok's supervisor's concern about the claim's validity suggest "that Chandhok lied about his general manager sending him home," MOO, 478 F. Supp. 3d at 1180; (iii) Companion Life's strict requirement that Chandhok demonstrate his disability through medical evidence neither was necessary under the policy nor appropriate to the particular facts of Chandhok's case, see MOO, 478 F. Supp. 3d at 1182; (iv) Companion Life, as a fiduciary, "shut its eyes to readily available evidence and denied Chandhok's claim with 'little or no evidence' to refute his theory," MOO, 478 F. Supp. 3d at 1183 (quoting Gaither v. Aetna Life Ins. Co., 394 F.3d 792, 807 (10th Cir. 2004)); and (v) Companion Life did not consider and discount adequately evidence that contradicted its conclusion that Chandhok's disability ended on July 5, 2016, not providing justification or reasoning for its dismissal of various medical opinions, including those of Chandhok's primary care physician,

Dr. Garcia, and thus did not make its determination on "'a reasoned basis,'" MOO, 478 F. Supp. 3d at 1187-88 (quoting Adamson v. Unum Life Ins. Co. of Am., 455 F.3d 1209, 1212 (10th Cir. 2006)).   The Court disagrees with Chandhok's argument that Companion Life's policy interpretation exhibits a degree of culpability, because Companion Life's argument that Chandhok was no longer an "active" employee under the policy after his final day of work on March 4, 2016, is a valid argument that the Court noted has been subject to multiple conflicting interpretations. See Memo. at 3; MOO I, 478 F. Supp. 3d at 1184-86.   The Court concludes, however, that Companion Life's renewed policy-eligibility argument tied to July 5, 2016, exhibits a degree of culpability that warrants the award of attorney's fees and costs, because it has misconstrued and misapplied the Court's conclusions from its MOO that its determination had "adequate justification."   Reconsideration MOO at *19.   Companion Life is culpable, because Companion Life, in these instances, misconstrues the record, raises discredited arguments to avoid payment, applies the wrong criteria to assess disability, ignores the opinions of Chandhok's treating physician, and proposes a post hoc rationale to justify its denial and conclusions regarding Chandhok's claims.   See MOO, 478 F. Supp. 3d at 1179-88.   Accordingly, the Court concludes that Companion Life has acted with a degree of culpability that makes an award of reasonable attorney's fees and costs appropriate.

Second, the Court concludes that Companion Life did not act in bad faith, because Companion life has not exhibited a subjective intent to confuse, mislead, or misrepresent to, the Court any arguments or facts.   Black's Law Dictionary defines bad faith as:

Dishonesty of belief, purpose, or motive.

"A complete catalogue of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of power to specify terms, and interference with or

failure to cooperate in the other party's performance."

Bad faith, Black's Law Dictionary (10th ed. 2014)(quoting Restatement (Second) of Contracts § 205 cmt. D (1979)).  The Honorable John D. Bates, United States District Judge for the United States District Court for the District of Columbia, held that, in an ERISA context, "[a]ctions that courts consider to be taken in bad faith typically reflect a party's intent to confuse or mislead the court," and concludes that a party's attempt to join various absent third-parties, and pursuit of unclear or confusing claims, do not constitute bad faith.  Clark v. Feder, Semo & Bard, P.C., 59 F. Supp. 3d 114, 118 (D.D.C. 2014)(Bates, J.).  The Court agrees that actions taken with an intent to confuse or mislead a court during litigation constitute bad faith, because they demonstrate a dishonest purpose.  "[T]he Court cannot comfortably say that Defendants engaged in either 'misdirect[ion]' or 'affirmative misrepresentation' and falsity, or that their litigation behavior . . . 'is awash with dishonesty of purpose . . . .'"  Smith v. Standard Life Ins. Co., 492 F. Supp. 3d 1282, 1290 (W.D. Ok. 2020)(DeGiusti, J.)(citing the record).  Still, bad faith is a high bar to surpass, requiring a party's intentional dishonesty and proof of a party's subjective intent.  Applying this standard of bad faith to Companion Life's conduct, both during the administrative review and the litigation before the Court, the Court cannot conclude soundly that Companion Life acted in bad faith.  Chandhok has not alleged, and the Court is unable to identify, any instance of Companion Life acting in a way, or having the subjective intent, that evidences an intentional dishonesty of belief, purpose, or motive in its dealings before the Court or in the administrative appeal stages of Chandhok's claim to mislead the Court.  See Memo. at 3.

### B.   COMPANION LIFE, AS THE OPPOSING PARTY, WILL BE ABLE TO SATISFY AN AWARD OF REASONABLE ATTORNEY'S FEES AND COSTS.

Companion Life has not presented any argument that it would be unable to satisfy an award of attorney's fees.  See First Response at 2.  Moreover, Companion Life has not contested the

$300.00 per hour rate that Chandhok has proposed; instead, Companion Life accepts it as reasonable.  See First Response at 8 n.21.  Companion Life is a large insurance company that offers insurance products in forty-nine states as well as the District of Columbia, and the Court sees no evidence that an award of $47,163.60 in reasonable attorney's fees and costs would be burdensome for Companion Life given its operation's size.         See About, Companion Life, companionlife.com/about.aspx (last visited Aug. 5, 2021).  Accordingly, the Court concludes that Companion Life will be able to satisfy an award in Chandhok's favor, and thus, this factor weighs toward granting the requested award of reasonable attorney's fees and costs.

      C.     **A FEE AWARD WILL DETER OTHER ERISA PLAN ADMINISTRATORS FROM ACTING SIMILARLY TO COMPANION LIFE, BECAUSE A FEE AWARD WILL ENCOURAGE ERISA PLAN ADMINISTRATORS TO CONSIDER FULLY ALL EVIDENCE PRESENTED, AND EXAMINE CONTRADICTORY EVIDENCE IN A SYSTEMATIC AND DOCUMENTED WAY.**

An award of attorney's fees may be effective in deterring ERISA plan administrators from engaging in behavior that is not compliant with ERISA, because "they will have added incentive to comply with ERISA, rather than facing suits for compliance, if they know that they may have to pay plaintiffs' attorneys' fees, in addition to the costs of compliance and their own legal fees." Marquardt v. North Am. Car Corp., 652 F.2d 715, 720 (7th Cir. 1981)).[19]  The Court is persuaded by this reasoning, because, in an ERISA action in federal court, often the best outcome that a plaintiff can achieve is the court's remand of the claim denial to the plan administrator.

---

[19]The Court notes that analysis of whether an award of attorney's fees may deter others from acting in a similar manner under like circumstances is often not definite, as there is little statistical evidence that demonstrates the deterrent effect of a particular award of fees.  See, e.g., Ray v. UNUM Life Ins. Co. of Am., No. Civ.  97WY556WD, 2005 WL 1994247, *2 (D. Colo. 2005)(Downes, J.)(holding that "an award of attorney's fees will, hopefully, deter such conduct by Defendant and others acting under similar circumstances"), aff'd 224 F. App'x 772, 788 (10th Cir. 2007); Kellogg v. Metro. Life Ins. Co., No. CIV 06-0610 DAK, 2009 WL 3064748, *2 (D. Utah 2009)(Kimball, J.).

Consequently, plan administrators, absent the threat of a fee award, face few consequences following the denial of a claim, and thus, may be incentivized to deny claims to conserve financial resources.  The Court concludes that attorney's fees are an appropriate avenue to ensure the stakes are higher for plan administrators when they deny benefits without fully evaluating a claim, not providing adequate reasoning and documentation for dismissing evidence that contradicts its conclusions, and misconstruing a court's conclusions to advance otherwise unsound new arguments.  See MOO, 478 F. Supp. 3d at 1178-89; Reconsideration MOO, at *19-22.

D.     **CHANDHOK DOES NOT SEEK TO BENEFIT ALL ERISA PLAN PARTICIPANTS OR RESOLVE A SIGNIFICANT LEGAL QUESTION REGARDING ERISA.**

Chandhok notes that "[w]hether these matters are of general benefit, or merely personal to Plaintiff is less clear.  Plaintiff's attorney has contended all the wrongdoing of Insurer is already prohibited.  Whether the interpretation of policy language of coverage is much contribution to the jurisprudence of ERISA disability litigation is at best undetermined."  Memo. at 4.  The Court concludes that its MOO does not generally benefit all ERISA plan participants, because this litigation is particular to Chandhok's claim for disability to Companion Life, and this action is not more than of personal benefit to Chandhok.  The Court also concludes that its policy interpretation regarding the date of policy eligibility is unique to Chandhok and has no implications for ERISA jurisprudence that have not been settled previously.  See MOO, 478 F. Supp. 3d at 1184-85. Accordingly, the Court determines that this factor does not weigh towards an award of reasonable attorney's fees and costs to Chandhok; however, this conclusion does not preclude an award of fees to Chandhok because the Tenth Circuit holds that no single factor is determinative in guiding the Court's discretion of whether to award fees.  See Cardoza, 708 F.3d at 1207.

E.     **ALTHOUGH NEITHER PARTY'S ARGUMENTS HAD OVERWHELMING MERITS, THE COURT CONCLUDES THAT THE PARTIES' RELATIVE MERITS FACTOR WEIGHS IN CHANDHOK'S**

**FAVOR, BECAUSE COMPANION LIFE'S MOTION TO RECONSIDER PERSISTS IN PRESSING UNSOUND ARGUMENTS REGARDING POLICY TERMINATION.**

The last factor that the Court considers in guiding its discretion whether to award reasonable attorney's fees and costs is the relative merits of the parties' positions.  See Cardoza, 708 F.3d at 1207.  The issues presented by the parties are not "'clearly one-sided,'" and there is legitimate dispute regarding both Companion Life's determinations and the two sides' interpretations of the policy.  Herring v. Oak Park Bank, 1997 WL 458417 at *3 (quoting McKinsey v. Sentry Ins., No. 90-2387, 1992 WL 279753, *2 (D. Kan. 1992)).  The Court, however, concludes that Companion Life's new arguments in its Motion to Reconsider, see Reconsideration MOO at *19, weigh in Chandhok's favor, because Companion Life persists in pressing unsound arguments regarding policy termination.  Companion Life raised new arguments in its Motion that are based on a flawed interpretation of the Court's reasoning for its conclusion that Companion Life's determination that Chandhok's disability ended on July 5, 2016, was arbitrary and capricious.  See Reconsideration MOO at *20.  Motions to reconsider under rule 59(e) should not "relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment."  See Exxon Shipping Co. v. Baker, 554 U.S. 471, 485 n.5 (2008); Reconsideration MOO at *20.  The Court concludes that Companion Life's Motion for Reconsideration relitigated old arguments, raised new arguments that could have been raised previously, and relied heavily on an erroneous interpretation of the Court's MOO I.  See Reconsideration MOO, at *19-20.  Because Companion Life's Motion to Reconsider is deeply flawed, this factor weighs favor of awarding reasonable attorney's fees and costs to Chandhok.

The Court concludes that (a) Companion Life acted culpably in its denial of Chandhok's claims; (b) Companion Life is able to satisfy an award of reasonable fees and costs; (c) an award of fees will deter Companion Life and other ERISA plan administrators from acting in a similar

manner; and (d) Companion Life later raises meritless arguments for reconsideration that make an award in Chandhok's favor appropriate; but (e) Chandhok's suit is not brought on behalf of a broad section of plan beneficiaries, nor does it resolve a broader question regarding ERISA.  The Court concludes that a majority of the five factors weigh in favor of an award of reasonable attorney's fees and costs to Chandhok.  Given that Chandhok has achieved a degree of success upon the merits and shown these factors weigh in his favor, the Court will award fees.

III.   **THE COURT WILL NOT AWARD FEES FOR WORK THAT CHANDHOK'S COUNSEL UNDERTOOK BEFORE THE START OF LITIGATION IN FEDERAL COURT, WHILE EXHAUSTING ADMINISTRATIVE APPEALS, BECAUSE ERISA'S PLAIN LANGUAGE DOES NOT PERMIT PRE-LITIGATION FEE AWARDS, AND PRE-LITIGATION FEE AWARDS WOULD FRUSTRATE ERISA'S PURPOSE.**

The Court concludes that it may not award fees for pre-litigation work, because an award of attorney's fees for pre-litigation work runs counter to 29 U.S.C. §1132(g)(1)'s plain language and would frustrate the Congressional purpose for ERISA -- to provide expeditious resolution of employee benefit claim disputes.  See, e.g., Rego v. Westvaco Corp., 319 F.3d at 150; Peterson v. Cont'l Cas. Co., 282 F.3d at 119.  Chandhok seeks an award of attorney's fees for work his counsel, Mr. James Rawley, completed during Companion Life's administrative appeal, including "review of the insurers file, and provision of medical records and opinions to the Insurer, all in an effort to reverse the denial, and avoid litigation."  Memo. at 4.  Chandhok argues that the Second, Third, Fourth, Sixth, Eighth, Ninth, and Eleventh Circuits all apply incorrectly precedent to the language and purpose of ERISA's fee shifting statute in reaching their conclusions that fees for pre-litigation work are not available.  See Memo. at 11-22.  ERISA's attorney's fee provision states that, "[i]n any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1).  The Court disagrees, and concludes that the

Second, Third, Fourth, Sixth, Eighth, Ninth, and Eleventh Circuits' identical conclusions -- that fees for work done before the start of litigation in federal court are not available to any party -- are correct.

Congress' use of the word "action," rather than the "inclusive disjunctive phrase 'action or proceeding,'" Hanhnemann Univ. Hosp. v. All Shore, Inc., 514 F.3d at 313, restricts fee awards to "formal adversarial proceeding under the jurisdiction of a court of law," Peterson v. Cont'l Cas. Co., 282 F.3d at 119.  Chandhok, however, is correct that § 1132(g)(1)'s plain language does not establish sufficiently that Congress meant to preclude the award of fees for work done in any forum other than a court of law.  See Delaware Valley, 478 U.S. at 558 ("Although § 1988 authorizes fees in 'any action or proceeding' brought to enforce the Civil Rights Acts, and § 304(d) applies only to 'any action' . . . this distinction is not a sufficient indication that Congress intended § 304(d) to apply only to judicial, and not administrative, proceedings.")  Chandhok argues that, in Delaware Valley, the Supreme Court "negates the reliance on 'text,' and the claimed 'statutory scheme' of ERISA as support for interpretation of the fee statute," and that the Courts of Appeals err by "ignoring the precept of Delaware Valley to evaluate the issue for fee for such proceeding based on the relationship of the work to the district court action."  Memo. at 11 (citing Delaware Valley, 478 U.S. at 560-61).

The Courts of Appeals' analyses distinguish Delaware Valley from ERISA actions by noting that fees are allowed for administrative proceedings where the plaintiff seeks to enforce a federal district court's judgment that has been decided already in the plaintiffs' favor, rather than before the start of district court litigation.  See Cann v. Carpenters' Pension Tr. Fund for N. Ca., 989 F.2d at 317; Peterson v. Cont'l Cas. Co., 282 F.3d at 121.  The Supreme Court in Delaware Valley holds that "measures necessary to enforce the remedy ordered by the District Court cannot

be divorced from the matters upon which Delaware Valley prevailed in securing the consent decree," and that work for which fees is available "must be 'useful and of a type ordinarily necessary' to secure the final result obtained from the litigation."  Delaware Valley, 478 U.S. at 560-61.  The Second and Ninth Circuits distinguish pre-litigation fees in an ERISA action from the post-litigation fees awarded in Delaware Valley, because, in Delaware Valley,

> the attorneys' fees were incurred after the court action, not before it as here. . . .  In these circumstances, a court has already decided that a party is entitled to prevail, but in the pre-adjudication phase at issue before us, such a determination has not yet been made.  Also, the administrative proceedings in those cases were before administrative agencies of government.  In the case before us, although we have analogized the proceedings before the trust to administrative proceedings, Amato v. Bernard, 618 F.2d 559 (9th Cir. 1980), they are actually part of a private, albeit regulated, claims process within the pension fund trust, enabling a claimant to obtain review of a denial within the trust before having to litigate.  29 U.S.C. § 1132(2); see Amato, 618 F.2d at 567.

Cann v. Carpenters' Pension Tr. Fund for N. Ca., 989 F.2d at 317.  See Peterson v. Cont'l Cas. Co., 282 F.3d at 121 ("[I]t is important to note in both Delaware Valley and Hudson, the Court authorized only the award of fees incurred during an administrative proceeding that occurred after a court of law assumed jurisdiction over the case.")(emphasis in original).  Chandhok calls this reasoning "illogical," and asserts that "courts have invented the distinction of prelitigation and post litigation for fee authorization as the statute makes no such distinction," although that the primary concern ought to be the whether the work is "intimately connected to the litigation."  Memo. at 17. The Court, however, agrees with the Second and Ninth Circuits' reasoning, because there is a noteworthy distinction between pre-litigation private administrative appeals and post-litigation work done to enforce a judgment obtained through the litigation.  ERISA's purpose also supports this conclusion; Congress imposed an exhaustion requirement to settle most benefits claims before litigation in federal court, and thus, conserve judicial resources.  See Rego v. Westvaco Corp., 319 F.3d at 150.  Rather than having an intimate connection with the litigation, such as the post-

litigation administrative work done to enforce a consent decree in <u>Delaware Valley</u>, the administrative appeals process required under ERISA is structured to avoid litigation altogether. <u>See</u> <u>Rego v. Westvaco Corp.</u>, 319 F.3d at 150. The Court concludes that allowing pre-litigation fee recovery would be inefficient and undermine ERISA's purpose, because it would subject a federal district court that is otherwise unfamiliar with the details of a certain individual's claim to litigation over whether attorney's fees are appropriate in cases where an administrative appeal settles in the beneficiary's favor.

Chandhok argues that, "[s]ince the claimant finds himself or herself in a complex maze of rules and procedures and evidentiary requirements [in ERISA administrative appeals], attorneys are very useful in navigating and presenting the claim to the tribunal below." Memo. at 15. The Court, however, concludes that allowing attorney's fees for pre-litigation work would encourage plaintiffs to rely upon attorneys to complete simple filings and "'create a system that is so complex that administrative costs, or litigation expenses, unduly discourage employers from offering welfare benefit plans in the first place.'" <u>Rego v. Westvaco Corp.</u>, 319 F.3d at 150 (quoting <u>Varity Corp. v. Howe</u>, 516 U.S. at 497). Encouraging lawyers' involvement in internal proceedings meant to settle a majority of potential benefit claims "would establish a far higher degree of formality and lead to more protracted litigation in a great many cases." <u>Rego v. Westvaco Corp.</u>, 319 F.3d at 150. "Congress required benefit plans to create internal dispute resolution procedures in order 'to minimize the number of frivolous ERISA lawsuits; promote the consistent treatment of benefit claims; provide a non-adversarial dispute resolution process; and decrease the cost and time of claims settlement.'" <u>Rego v. Westvaco Corp</u>, 319 F.3d at 150 (quoting <u>Makar v. Health Care Corp. of Mid-Atlantic (Carefirst)</u>, 872 F2d 80, 83 (4th Cir. 1989)). Congress created ERISA's exhaustion requirement to discourage litigation in federal court. Accordingly, the Court concludes

- 51 -

that allowing fees for pre-litigation work runs counter to ERISA's purpose, and threatens the efficient functioning of employee welfare plans and expeditious provision of benefits, and, therefore, denies Chandhok's request for fees for 19.7 hours of work completed before the start of litigation in the Court.

## IV.   THE COURT WILL AWARD CHANDHOK REASONABLE ATTORNEY'S FEES AND COSTS FOR 143.34 HOURS OF WORK AT A RATE OF $300.00 PER HOUR FOR A TOTAL AWARD OF $47,163.60.

An award of reasonable attorney's fees and costs is appropriate, because: (i) Chandhok, in convincing the Court to remand his claims to Companion Life for further consideration and in successfully arguing that the policy language covers his claim beyond his last day of work on March 4, 2016, achieved some degree of success on the merits, and thus, is eligible for a fee award under Hardt; and (ii) the Court determines that the Tenth Circuit's five factors weigh in Chandhok's favor.  The Court will not, however, award fees for the 183.1 hours total Chandhok requests, because the Court concludes that fees are not awardable for work done before the start of litigation in the Court.  See Invoice at 10.  Chandhok requests fees for a total of 183.1 hours of work, including hours worked pre-litigation and in the Court.  See Invoice at 10.  The Court, however, after conducting an independent review of the Invoice, concludes that Chandhok has miscalculated his documented hours and that 183.1 hours is a mistake.  See Invoice at 1-10.  The Court concludes, after conducting an independent review of the invoice, that the total number of hours documented is 163.04 hours.  See Invoice at 1-10.  Next, the Court deducts 19.7 hours of work from the total hours requested, because these are hours that Chandhok's attorney worked during the pre-litigation stages of this case.  See Invoice at 1-3.  After subtracting 19.7 hours from 163.04 hours, the Court calculates that the total awardable hours for reasonable hours devoted to this litigation is 143.34.  The lodestar amount for the initial fee product is the total reasonable hours, 143.34, multiplied by the reasonable hourly fee, agreed to be $300.00, which is $43,002.00.

The Court concludes Chandhok's request of $718.60 for filing and printing costs is reasonable, and adds $718.60 to the initial fee product for a total of $43,720.60.  See 29 U.S.C. 1132(g)(1); Invoice at 10.  The Court next multiplies this amount by the gross receipts taxation rate at 7.8750%, which yields $3,443.00.  See Invoice at 10.  The Court adds this tax amount to the previous total to reach the final sum of the total fee award -- $47,163.60.  The Court, therefore, concludes that Chandhok is entitled to an award of reasonable attorney's fees and costs in the amount of $47,163.60, and Companion Life must pay this amount to Chandhok.

IT IS ORDERED that: (i) the Plaintiff's Petition for an Award of Attorney's Fees, filed September 17, 2020 (Doc. 33), is granted in part and denied in part; (ii) Chandhok's Memorandum of Law in Support of Motion for an Award of Attorneys Fees and Costs, filed November 24, 2020 (Doc. 39), is granted in part and denied in part; (iii) the Court will grant Chandhok a fee award of $47,163.60; and (iv) Defendant Companion Life shall pay to the Plaintiff Paul Chandhok a total award of $47,163.60.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

James Rawley
James Rawley Law Office
Albuquerque, New Mexico

*Attorney for the Plaintiff*

Scott D. Sweeney
Joshua Bachrach
Wilson Elser Moskowitz Edelman & Dicker, LLP
Denver, Colorado

*Attorneys for the Defendant*